**In the Interest of M.Z., A Child,**

**K.Z.F., Mother, Appellant.**

**No. 91–868.**

Court of Appeals of Iowa.

Dec. 31, 1991.

Bobbi M. Alpers, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kath-

rine S. Miller–Todd, Asst. Atty. Gen., for appellee, the State of Iowa.

John A. Bowman, Davenport, for appellee, the child M.Z.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

K.Z. is the mother of four children; two sons, B.Z. and N.Z., and two daughters, A.Z. and M.Z. The two boys were earlier adjudicated to be in need of assistance and now live with their father. One daughter, A.Z., was placed for adoption by the mother because the mother had no place to stay and was living in an abandoned house. M.Z. is the subject of this action.

M.Z. was born on December 4, 1989. Two and a half months later, K.Z. called a Bethany Homes worker and requested that M.Z. be placed in foster care for the purpose of having M.Z. adopted. A week later, K.Z. apparently changed her mind and requested that the baby be returned to her. M.Z. was returned, but the Bethany Homes worker, troubled by K.Z.'s actions and statements, asked K.Z. to seek an evaluation at Vera French Mental Health Center.

On February 21, 1990, the Department of Human Services (DHS) requested that a child in need of assistance (CINA) petition be filed on behalf of M.Z. Concerns were raised that K.Z. was incapable of making reasoned decisions regarding the child. K.Z. had stated that she only cared for M.Z. three days per week and left the child with others for the balance of the time. She also stated that she did not want to keep M.Z. but she was worried what her friends would think. K.Z. had become verbally abusive and was not acting rationally. On March 1, 1990, a CINA petition was filed.

K.Z. was evaluated by Mercy's Addictions Recovery Center (MARC) on April 2, 1990. Inpatient treatment was recommended because previously recommended treatment had not been completed. On April 9, 1990, K.Z. voluntarily placed M.Z. in foster care so that she could enter inpatient treatment for alcoholism at MARC.

On April 13, 1990, K.Z. left treatment without the consent of her counselor because she found the program to be too intense. On April 19, 1990, M.Z. was found to be a child in need of assistance pursuant to sections 232.2(6)(c)(2) (lack of supervision) and 232.2(6)(k) (parent for good cause desires to be relieved of care and custody) of the 1991 Iowa Code. M.Z. remained in the custody of the DHS pending the dispositional hearing. Once again, on April 30, 1990, K.Z. was drunk and verbally abusive.

In May, 1990, the DHS filed a case permanency plan which reflected the concerns presented in the social investigation. The social investigation noted that K.Z. had a substance abuse problem which dated back to her early teens. It concluded that a psychological evaluation was vital due to K.Z.'s early and severe substance abuse. Therefore, the plan required K.Z. to complete substance abuse treatment and complete a psychological evaluation within sixty days.

A psychological evaluation was scheduled for May 3, 1990. K.Z. did not keep the appointment. Because K.Z. had also canceled an appointment at the last minute on April 10, the doctor refused to schedule another appointment.

K.Z. returned to MARC on May 24, 1990, for substance abuse treatment. However, the very next day, she again left the program without her counselor's consent. On May 31, 1990, a friend signed commitment papers for K.Z. to undergo detoxification at County Oaks (CADS). K.Z. entered CADS on June 5, 1990, and she was released on June 8, 1990. CADS recommended inpatient treatment. On June 26, 1990, K.Z. again entered MARC.

The case permanency plan provided that K.Z. could have weekly supervised visits with M.Z. Between April 9, 1990, and June 25, 1990, only two visits occurred. On June 12, K.Z. called to schedule a third visit, but she did not confirm the visit or appear at the office. No further contact was made by K.Z. until she entered MARC on June 26. While at MARC, K.Z. visited with M.Z. two times.

K.Z. was discharged from MARC on July 17, 1990. Upon her discharge, it was recommended that K.Z. abstain from using substances, attend a minimum of four Alcoholics Anonymous meetings per week, attend aftercare once a week for a year, maintain regular contact with an A.A. sponsor, spend nine days in outpatient treatment at MARC, and find different living arrangements. K.Z. was also expected to complete a psychological evaluation, contact Vera French Mental Health Center for an appointment, and have weekly supervised visits with M.Z.

Although another appointment was made by K.Z.'s counselor for K.Z. to obtain a psychological evaluation, K.Z. was reluctant to follow through. K.Z. only maintained regular contact with her counselor for two weeks following her discharge from MARC. She completed the nine days of outpatient treatment by July 30, but there was no evidence that she had attended any A.A. meetings. She attended only one aftercare session three days after her discharge.

In August, K.Z. only showed up for two visits with M.Z. On August 30, K.Z. made a complaint to the Davenport Police Department that she had been assaulted by her boyfriend. The couple had been drinking for several hours and had become embroiled in an argument. The boyfriend was arrested.

On September 9, 1990, K.Z. entered the emergency room at Mercy Hospital. She had become very depressed and had cut her wrists. Her blood alcohol level was measured at .212. A blood test also revealed the presence of cocaine. A psychotherapeutic follow-up at the Vera French Mental Health Center was recommended. K.Z. was transported to the mental health center two days later, and it was recommended that she enter the adult day treatment program. K.Z. initially agreed to this, but she changed her mind the next day. Two individual therapy sessions were nevertheless scheduled for K.Z. She failed to keep both appointments. She also failed to keep two appointments with the psychiatrist.

K.Z. and her boyfriend, R.F., married on September 21, 1990. R.F. is an alcoholic and a convicted felon. He has a long history of arrests, and he has physically abused K.Z. On September 30, 1990, K.Z. was again admitted to Mercy Hospital with a self-inflicted cut on her wrist. She admitted to using alcohol and cocaine, and her blood alcohol level was measured at .223. K.Z. was one month pregnant. She agreed to go to CAD again upon discharge. However, she did not follow through with CAD or mental health services.

K.Z.'s social worker met with K.Z. and her new husband on October 2, 1990. K.Z. reported that she had not completed the psychological evaluation, she had not attended appointments at the mental health center, she had not been to MARC, and she was living at the same address. Her contacts with the social worker and M.Z. were sporadic and infrequent. No visits between K.Z. and M.Z. took place between August 18 and October 1, 1990.

K.Z.'s social worker encouraged her to waste no time in satisfying the requirements of the case permanency plan, because M.Z. had been in foster care for six months. Despite this encouragement, K.Z. failed to make any progress on the plan between October 1990 and January 1991. She did not complete the psychological evaluation; she did not participate in the aftercare program; she did not make new living arrangements; she did not visit regularly with M.Z.; and she only had sporadic contact with her social worker.

On October 27, 1990, a stabbing occurred at a local bar. The police report indicated that K.Z. and R.F. were present. On December 18, 1990, K.Z. indicated she was still drinking. She only made seven visits to see M.Z. between October 1, 1990, and January 11, 1991. She provided no birthday presents or Christmas presents to M.Z. She did not provide anything for M.Z.'s needs during visits.

The case permanency plan of January 11, 1991 recommended termination proceedings be initiated. A petition for termination of K.Z.'s parental rights with regard to M.Z. was filed on March 1, 1991. The petition

was based on Iowa Code section 232.-116(1)(g) (1991). By the time of the termination hearing, marginal improvement was seen in K.Z.'s performance. She began to visit M.Z. more regularly beginning January 25, 1991. However, overall, she had only attended forty-three percent of the available visits. Although K.Z. began to document attendance at A.A. meetings, her attendance at aftercare was sporadic, and she still had no sponsor. She did not accept the recommendation of MARC for her to reenter inpatient treatment followed by a halfway house referral. She had still not completed the psychological evaluation. She had only minimal contact with Community Health Care for prenatal care.

In May 1991, the juvenile court entered an order terminating K.Z.'s parental rights with respect to M.Z. pursuant to Iowa Code sections 232.116(1)(g) and 232.117 (1991). K.Z. has appealed. K.Z. argues the State's evidence was insufficient to support the juvenile court's judgment. She also argues DHS has failed to make reasonable efforts to reunite her with her daughter.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ Iowa Code section 232.116(1)(g) (1991) provides:

[T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on ... the following grounds:

\* \* \* \* \* \*

g. The court finds that all of the following have occurred:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.-102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

K.Z. concedes that the first three requirements of section 232.116(1)(g) have been met. She argues the State has failed to prove by clear and convincing evidence that M.Z. cannot be returned to her custody.

Within the meaning of section 232.-116(1)(g)(4), a child cannot be returned to the custody of the child's parents if any one of the grounds listed in Iowa Code section 232.2(6) (1991) are proven by clear and convincing evidence. *See In re A.M.S.,* 419 N.W.2d 723, 725 (Iowa 1988) (interpreting Iowa Code section 232.116(1)(e)(4) (1991)).

M.Z. was found to be a child in need of assistance based on Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(k) (1991) on April 19, 1990. Section 232.2(6)(c)(2) provides:
*"Child in need of assistance"* means an unmarried child:

\* \* \* \* \* \*

c. who has suffered or is imminently likely to suffer harmful effects as a result of ...:

\* \* \* \* \* \*

(2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

Section 232.2(6)(k) provides:
*"Child in need of assistance"* means an unmarried child:

\* \* \* \* \* \*

k. Whose parent, guardian, or other custodian for good cause desires to be relieved of the child's care and custody.

■ On our review, we find clear and convincing evidence to show that if M.Z. were returned to K.Z.'s custody, M.Z. would, again, be a child in need of assistance based on one of the same grounds necessitating the original adjudication. Central to a determination of this nature are the immediate and long-term best interests of the child. *In re Dameron*, 306 N.W.2d 743 at 745 (Iowa 1981). In determining what the future likely holds for the child if the child is returned to the parent, we gain insight from evidence of the parent's past performance. *Id.* The parent's past performance may be indicative of the quality of future care the parent is capable of providing. *Id.*

Since the original CINA adjudication, K.Z. has wholly failed to comply with the case permanency plan established by the DHS. She failed to submit to a psychological evaluation. She failed to adequately address her severe substance abuse problem. Finally, she attended only thirteen of approximately forty possible visits with M.Z. for the first ten months of M.Z.'s foster care. Her visits were sometimes six weeks apart. In short, K.Z. has shown no improvement in her parenting skills despite extensive efforts by the DHS to help her.

K.Z. also argues the DHS failed to make reasonable efforts to reunite her with M.Z. We disagree. It was K.Z., not the DHS, who exhibited a lack of effort. The DHS made every effort to provide K.Z. with the opportunity to be reunited with M.Z. It was K.Z. who failed to seize upon that opportunity.

■ A child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). While the law demands a full measure of patience with a troubled parent who attempts to remedy a lack of parenting skill, *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988), a child need not endlessly await the maturity of his or her natural parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). Termination should occur if the statutory time period has elapsed and the parent is still unable to care for the child. *Id.* It must be remembered that, although there exists a parental interest in the integrity of the family unit, that interest is not absolute. *Dameron*, 306 N.W.2d at 745. Rather, our primary consideration is the best interest of the child. *Id.* Tragically, when these interests are found to be at odds, the State, charged with the duty to see that every child within its borders receives proper care, must intercede to prevent probable harm to the child. *See In re A.T.*, 433 N.W.2d 64, 66 (Iowa 1988). We affirm the juvenile court's decision to terminate K.Z.'s parental rights with respect to M.Z.

The costs of this appeal are taxed to K.Z.

AFFIRMED.