In the Interest of C.L.H. and
S.D.H., Minor Children,

S.H., Natural Father, Appellant,

S.C., Natural Mother, Appellant.

No. 92–1457.

Court of Appeals of Iowa.

March 30, 1993.

Francis C. Hoyt, Jr., West Des Moines, and James Cook, Des Moines, for appellant S.H.

Michael P. Holzworth, Des Moines, for appellant S.C.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Michelle Chenoweth, West Des Moines, atty. and guardian ad litem for minor children.

Gregory Noble of Murray, Jankins & Stennes, Des Moines for Suzanne Small, maternal grandmother of minor children.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

S.H. and S.C. are the natural parents of two minor children: S.D.H., born in August 1988, and C.L.H., born in January 1990. The mother, S.C., was sixteen years old when S.D.H. was born. S.C. and S.H. never married.

Between July 1989 and April 1990, four founded reports of denial of critical care were investigated and compiled by the Iowa Department of Human Services (DHS). In June 1990, S.C. was arrested for third-degree theft and incarcerated. The State placed the two children in the home of the paternal grandparents. In July 1990, the children were removed from that home due to physical abuse by the grandparents' twelve-year-old son.

In August 1990, the parties stipulated to a child in need of assistance (CINA) adjudication for both children. The court ordered both parents to obtain parenting, psychological, and substance abuse evaluations. The court ordered supervised visitation for both parents. These orders of the court were essentially the components of the case permanency plan throughout this entire case. The court also ordered a home study of the maternal grandmother, S.S.

A dispositional hearing was held in October 1990. At that hearing, the juvenile court ordered the legal custody of the children be transferred to S.S. The court also ordered supervised visitation continue and that the parents comply with the recommendations of the case permanency plan.

During the following months, S.C. attempted to complete three different drug treatment programs. She first enrolled in a treatment program in February 1991, but left the program against medical advice. S.C. was discharged from the next program she entered due to her consistent non-compliance with the rules. In April 1991, S.C. entered into a third treatment program, the University of Iowa Chemical Dependent Center at Oakdale. The report from this program found S.C. to be severely troubled and that she needed to overcome her drug addiction before she could function as a parent.

In April 1991, this case was reviewed by the juvenile court. The children had been doing well with S.S. However, the parents visited the children only sporadically and the DHS worker, Mary Hannam–Johnson, reported the initial visits were disrupted by fighting between S.C. and S.H. In its order, the court essentially continued the status quo.

In May 1991, S.C. moved to Minnesota and claimed she would be entering treatment there. Her last visit with the children had been in March 1991. During her stay in Minnesota, S.C. failed to keep in

contact with DHS regarding her whereabouts or her activities. In the fall of 1991, S.C. returned and was almost immediately incarcerated for a parole violation. After spending three months in jail, S.C. was released in December 1991. She then entered the House of Mercy, a residential facility for homeless women and their children.

As of October 1991, S.H.'s last visit with the children had been in June 1991. Since that time, S.H. had not contacted DHS regarding his whereabouts.

In September 1991, the State filed a petition for termination of the parental rights of S.C. and S.H., relying on Iowa Code section 232.116(1)(g) (1991). The State alleged neither parent had complied with the case permanency plan and their visitations with the children had only been sporadic. A hearing on the petition was first held on December 10, 1991. Counsel for S.C. requested a continuance because S.C. was still incarcerated. Although the juvenile court denied S.C.'s motion, the evidence was not concluded at this hearing. The matter was then continued until February 1992.

At the February hearing, counsel for both S.C. and S.H. made applications to excuse themselves from the case. Counsel had learned certain matters in the course of the attorney-client relationship which precluded them from ethically continuing to represent S.C. and S.H.

The hearing then reconvened in March 1992. S.C. testified she had not used drugs or alcohol since February 1991 and she was regularly attending Alcoholics Anonymous and Narcotics Anonymous meetings. The maternal grandmother, S.S., testified she believed S.C. was progressing towards the time when she would be able to regain custody, but S.C. still needed more counseling and guidance in parenting. S.S. contended she wanted to adopt the children if S.C.'s parental rights were terminated. The evidence at this hearing again was not concluded, and the matter was continued until April 1992.

At the April hearing, S.H. testified he did not want his rights terminated but he was not stable enough to take care of the children. Finally, Hannam–Johnson of DHS testified both S.C. and S.H. had had supervised visitation with the children since December 1991. She further testified that, although she had requested the information from S.C., S.C. would not tell her where she was currently residing. The testimony and evidence was concluded at this hearing.

In July 1992, the juvenile court found the State had proven the elements of section 232.116(1)(g) by clear and convincing evidence and ordered the parental rights of S.C. and S.H. terminated.

S.C. and S.H. now appeal. S.C. contends the juvenile court erred in not dismissing the petition due to the court's failure to abide by the time standards for case processing. S.C. and S.H. both contend the State did not establish the elements of section 232.116(1)(g) by clear and convincing evidence and thus the petition to terminate their parental rights should have been denied. Finally, S.C. and S.H. contend the juvenile court should not have terminated their parental rights because the children were in the custody of a relative and termination would be detrimental to the children.

Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

**I.** *Juvenile Court's Failure to Abide by Time Standards for Case Processing.* S.C. first contends the juvenile court erred by not dismissing the termination of parental rights petition on the grounds the juvenile court had failed to abide by the supreme court's time standards for case processing.

In the processing of termination of parental rights cases, the supreme court has set the time standard of sixty days between filing and hearing, and the time standard of five months between filing and

disposition. Time Standards for Case Processing (August 15, 1992). However, these standards are "to be utilized as guidelines, and while not mandatory, are urged upon both counsel and the court as an aid to their actions and deliberations." *Id.* In this case, the lack of adherence to these standards occurred in part because of the continuances. Several of these continuances were requested by S.C. and S.H.'s counsel.

Iowa Code chapter 232, the juvenile code, is to be "liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1 (1991). The primary concern in termination proceedings is the best interest of the child. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981).

■ We find the time standards imposed upon the juvenile court are not controlling. To dismiss the petition based on the untimeliness of the proceedings would not have been in the best interests of the children. We find the juvenile court did not err in refusing to dismiss the termination of parental rights petition for failure to abide by the time standards for case processing.

**II. *Whether the State Proved the Elements of Section 232.116(1)(g) by Clear and Convincing Evidence.*** S.C. and S.H. both contend the State did not prove the elements of section 232.116(1)(g) by clear and convincing evidence and thus the petition to terminate their parental rights should have been denied.

Iowa Code section 232.116(1)(g) (1991) provides for termination of parental rights where the court finds the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102

for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The children were ages two and three at the time the petition was filed and have been placed outside of the parent's home since the CINA adjudication in August 1990. Therefore, the issue on appeal relates only to section 232.116(1)(g)(4).

The criteria for determining whether a child may be returned to the home is similar to the statutory criteria for determining whether a child should be removed from the home. *In re M.W.,* 458 N.W.2d 847, 850 (Iowa 1990). Statutory criteria for determining whether a child shall be removed from the home include whether "the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." *Id.* (quoting Iowa Code § 232.102(5)(b)).

In its order terminating S.C. and S.H.'s parental rights, the juvenile court specifically found the parents had not taken advantage of the services made available to them and failed to effectively follow through with the case permanency plan's recommendations. The juvenile court also found neither parent had demonstrated any improvement in the stability of their lives.

The case permanency plan, which was adopted by the juvenile court, recommended S.C. keep in regular contact with the DHS worker, keep an address on file, successfully complete a substance abuse program, and actively participate in individual counseling. The plan recommended S.H. receive a substance abuse evaluation and complete treatment. The plan also recommended S.C. and S.H. avail themselves of parenting and family services and obtain and maintain employment and housing. The plan clearly was intended to allow S.C. and S.H. to mature and to stabilize their

lives so that the children could eventually be returned to their care.

We recognize, following three unsuccessful attempts at treatment, S.C.'s recent efforts through the House of Mercy, Narcotics Anonymous, and Alcoholics Anonymous to overcome her substance abuse problem. However, we take note of the testimony of Judy Goode, a counselor at the House of Mercy. Goode testified recovery from such a substance abuse problem was typically a two-year process. S.C. did not begin to seriously approach her substance abuse problem until December 1991, when she entered the House of Mercy. The DHS, the juvenile court, and the case plan all had recommended S.C. receive treatment long before December 1991.

It does not appear S.C. had attempted to comply with the other recommendations of the case permanency plan. S.C. had failed to stay in contact with either the DHS worker or the juvenile court officer. By as late as spring 1992, S.C. was missing appointments with Polk County Mental Health. Although she had been advised to stay away from S.H., S.C. become pregnant as a result of contact with S.H. on the day she was released from jail and entered the House of Mercy. Finally, even by the time of trial, S.C. still had not told Hannam–Johnson where she was living.

S.H. has been equally, if not more, resistant to complying with the terms of the case permanency plan. S.H. missed visitation with the children for four to five months at a time. He had made only minimal attempts to contact DHS regarding his whereabouts and activities. S.H. had missed court hearings. He had been arrested four times for domestic assault, but had not completed domestic abuse classes. S.H. failed to complete the necessary paperwork requested by Broadlawns clinical psychologist, Cynthia Davis, who was completing a parenting evaluation. By as early as August 1990, the plan had ordered S.H. complete a substance abuse evaluation. However, almost two years later, S.H. still had never completed such an evaluation.

The case permanency plan was initially adopted in October 1990. S.H. and S.C. both had over eleven months between that time and the filing of the termination petition to demonstrate their efforts and desire to achieve reunification with their children. Furthermore, over eight months passed between the filing of the petition and the conclusion of the evidence presented at the hearing.

Reasonable efforts to reunite the parent and child are required prior to termination. *See In re M.Z.*, 481 N.W.2d 532 (Iowa App.1991). We find the State, DHS, and the juvenile court all have made reasonable efforts to promote reunification between the children and S.C. and S.H. Yet, the parents have taken virtually no steps to work towards this goal.

The failure of the parents to comply with DHS's case plan cannot be an independent ground to terminate parental rights. *In re J.L.P.*, 449 N.W.2d 349, 352 (Iowa 1989). However, that failure "can be considered evidence of the parent[s'] attitude[s] toward recognizing and correcting the problems which resulted in the loss of custody." *Id.* These children should not be forced to endlessly await the maturity of their parents. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). Termination must occur if twelve to eighteen months have elapsed since the child was removed from the home and the parents still cannot take care of the child. *Id.* Evidence of S.C. and S.H.'s past performance may be indicative of the quality of future care they are capable of providing. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

The parents have shown no significant signs of improvement. S.C. is currently living in a residential shelter for homeless women and children and continues to struggle with overcoming her substance abuse problem. S.H. has testified he is not stable enough to care for the children. We find the State has established, by clear and convincing evidence, the children cannot be returned to the home of either parent at this time. The juvenile court properly terminated the parental rights of both parents under section 232.116(1)(g).

**III.** *Whether Termination was Warranted under Sections 232.116(3)(a) and (c).* S.H. and S.C. next contend the juvenile court should not have terminated their parental rights because the children were in the legal custody of a relative and termination would be detrimental to the children.

Iowa Code sections 232.116(3)(a) and (c) (1991) provide, in relevant part:

> 3. The court need not terminate the relationship between the parent and child if the court finds any of the following:
>
> a. A relative has legal custody of the child. [or]
>
> \* \* \* \* \* \*
>
> c. There is clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship.

S.H. and S.C. contend termination should have been avoided under either section.

We note section 232.116(3) contains no mandatory language. *See In re J.V.,* 464 N.W.2d 887, 890 (Iowa App.1990). In interpreting section 232.116(3)(e), another subsection of section 232.116(3), our court has held:

> [I]t is self-evident in the words "[t]he court *need not terminate* the relationship" that the legislature did not intent this to be a mandatory provision. Unlike the words "shall not terminate" which would impose a duty, *id.* § 4.1(36)(a), or "must not terminate," which would state a requirement, *id.* § 4.1(36)(b), the words "need not terminate" are clearly permissive.... [I]t is within the sound discretion of the court, based upon the unique circumstances before it and the best interests of the child, whether to apply section 232.116(3)(e) to save the parent-child relationship.

*J.V.,* 464 N.W.2d at 890. We find this reasoning applicable in our review of sections 232.116(3)(a) and (c).

■ We first address the issue of whether the termination should have been avoided under section 232.116(3)(a). Since October 1990, legal custody of the children has been placed with S.S., the maternal grandmother. However, during this period, S.S. failed to cooperate with DHS in coordinating supervised visits and in locating S.C.

More importantly, S.S. does not appear to be committed to providing long-term care for the children. S.S. testified at trial she wants to continue to have the children. Yet, prior to trial S.S. had expressed her decision not to pursue adoption of the children for personal, financial, and health reasons. S.S. had told Hannam–Johnson of DHS she did not believe she could provide the best home to the boys over the years. To avoid termination and rely upon S.S.'s care would only delay the chances of finding a permanent stable home for the children. To do so would also not be in the children's best interests. We affirm on this issue.

■ We next address the issue of whether the termination should have been avoided under section 232.116(3)(c). We do not find the termination of S.C. and S.H.'s parental rights would have been so detrimental to the children so as to warrant a denial of the petition to terminate. While a relationship admittedly exists between S.C. and the children, we find little evidence of a relationship between S.H. and the children. However, both S.C. and S.H. have had only sporadic visitation with the children since they were placed in S.S.'s custody. During the pendency of the juvenile court proceedings, S.C. fled the State and did not see her children for a period of several months.

The children in this case are still both relatively young. S.D.H. and C.L.H. have not lived with either parent since they were, respectively, less than two years and six months of age. We do not find the petition to terminate the parental rights of S.C. and S.H. should have been denied on the basis of section 232.116(3)(c).

The costs of this appeal are taxed one-half to S.H. and one half to S.C.

For the reasons stated, we affirm the judgment of the juvenile court.

**AFFIRMED.**

OXBERGER, C.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I dissent.

The children have been in the legal custody of their maternal grandmother since removal from their mother's care. The children are thriving in her care. The grandmother is willing to retain custody of the children until their natural mother is able to parent them.

Iowa Code section 232.116(3) (1991) provides that the court need not terminate the relationship between the parent and the child if the court finds any of the following: (a) a relative has legal custody of the child; and (c) there is clear and convincing evidence the termination would be detrimental to the child at the time because of the closeness of the parent-child relationship.

The children's biological family is handling the situation. The children are now three years old and five years old and have bonded with their biological family.

Termination of parental rights carries with it no guarantees of adoption.

The children are well taken care of and their mother who was young when they were born is maturing. I have great respect for biological ties and great respect for this grandmother who was willing and able to help her daughter parent. There is no push by the grandmother to adopt the children. I do not understand how termination of parental rights does anything but harm these children who when their parental rights are terminated and they become wards of the state could be put in other placements and removed from the care of their grandmother who has been such an important and constant person in their lives.