**IN THE COURT OF APPEALS OF IOWA**

No. 14-0244
Filed April 16, 2014

**IN THE INTEREST OF K.R., D.R., K.R., and P.R.,**
**Minor Children,**

**L.R., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

A mother appeals the order terminating her parental rights. **AFFIRMED.**

Michael B. Oliver of Oliver Law Firm, P.C., Windsor Heights, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin Patrick, Assistant County Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

A mother appeals from the juvenile court's order terminating her parental rights to her four children.[1]  We affirm.

## I.  *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in December 2012 following reports of ongoing and escalating domestic violence between the mother and father.  There were also concerns about the parents' substance abuse and unaddressed mental health issues.  The juvenile court entered an ex parte removal order for the parents' four children (ages five, five, three, and two years old) in December 2012.  The children were adjudicated to be in need of assistance in January 2013.  There have been no trial returns to the home.  The mother has not progressed to unsupervised visitations.

DHS initiated reunification services.  The mother acknowledged the parents' domestic abuse history, described the relationship as "toxic," and admitted the children were removed because the home was not safe.  However, after the children were removed, the mother continued her relationship with the father, ignored no contact orders, denied the truthfulness of her previous statements to police, and did not follow through with services to address the issues causing the domestic violence.  The mother candidly testified, "I chose my husband over my kids."

The mother also denied having a substance abuse problem.  She missed drug screens and declined treatment.  Later, at the termination hearing, the

---

[1] The father of the children is deceased.

mother described her lengthy history of drug use, including first using methamphetamine at age thirteen, and times, such as after the birth of her first child (not a child involved in these proceedings[2]), when she used "pretty bad." The mother also stated she has used numerous prescription drugs for ten years, but only recently developed an addiction. She focused on the father being the one who had a "problem" with taking prescription drugs, but agreed she supplied the drugs to him. The mother testified in June 2013, she began abusing the drugs by "shooting them up."

The father passed away during these proceedings. After his death, the mother pled guilty to shoplifting; as a result her probation for a prior shoplifting offense was revoked. In September 2013, the mother began serving a 120-day jail sentence in the Polk County Jail.

The State filed a petition to terminate parental rights in November 2013. The termination hearing was held in December 2013. The record before the juvenile court indicated the mother had a lengthy history of substance abuse, a violence-infused relationship ending only upon the death of the father, and a failure to assume any sort of parental responsibilities over her children. The court observed the mother had not addressed these concerns in any meaningful or sustained manner. The mother expected to be released from jail in January 2014. She admitted the children could not be returned to her care at that time and acknowledged she would need to complete drug treatment and demonstrate sobriety and stability in the community for a period of time before they could be

---

[2] The mother's first child was born in 2001. The mother stated she was using methamphetamine at that time and placed the child with her parents, the child's maternal grandparents.

returned to her. By the time of the termination hearing, the children had been placed in the home of the mother's sister and her spouse for one year, and they expressed a willingness to adopt the children. The mother acknowledged the children were thriving and in a safe and appropriate home with her sister.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code sections 232.116(1)(b), (d), (e), (h), (i) and (*l*) (2013). The mother appeals.

## II. *Scope and Standard of Review*

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

## III. *Discussion*

### A. *Grounds for Termination*

We must first determine whether a ground for termination under section 232.116(1) is established. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Here, the mother does not dispute the statutory grounds under sections 232.116(1)(b), (d), (e), (h), (i) and (*l*) have been proved by clear and convincing evidence.

*B.    Factors in Termination*

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37.   In determining the best interests, this court's primary considerations are "the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child."  *Id.*

The mother contends termination of her parental rights was not in the best interests of the children.  She claims that although she was unable to meet the needs of the children on the date of the termination hearing, at no time during these proceedings did her bond with the children waiver.  The mother states she "received a large dose of reality" following the death of the father and during her time in jail.  She claims the classes she was taking in jail were the "first time" she gained insight and realization concerning the impact her actions have on herself and her children.  The mother claims despite her "setbacks," the children "still need their mother and that it is her number one goal in life to get better, learn from her mistakes, and be there for her children when she is released."

On our de novo review, we agree with the juvenile court's finding that termination of the mother's parental rights is in the best interests of the children and would best provide for the children's long-term nurturing and growth.  As the court observed:

> The children's safety is the Court's primary consideration. There are ongoing safety concerns about the safety of the children if returned to the care and custody of their mother.  The children need a long-term commitment by an adult who can be appropriately nurturing, supportive of their growth and development, and who can

> appropriately meet their physical, mental, and emotional needs. The children are currently placed in a family that meets such criteria.
>
> The children's best interests require that the parental rights of [] their mother[] be terminated.

An array of services has been offered to the mother to eliminate the need for DHS involvement. Unfortunately, the mother "wasted a lot of time denying substance abuse," "did not participate in any of the services in any meaningful way," and "ha[d] yet to demonstrate a sustained parental interest in the children." We acknowledge the mother's testimony that her jail sentence was "probably the best thing for [her] because it let [her] wake up and see what [she] had, what [she] was losing." However, we agree with the juvenile court that overall, the mother has not supported the children in any way.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41; *see A.B.*, 815 N.W.2d at 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining his future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (finding that when considering what the future holds if the child is returned to the parent, we must look to a parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future). Here, the mother is unable to assume custody of the children now or at any time in the foreseeable future. Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

*C.      Factors Against Termination*

Finally, we give consideration to whether any exception or factor in section 232.116(3) applies to make termination unnecessary. The mother claims the juvenile court erred in terminating her parental rights due to her close bond with the children. She also claims the court should have considered a relative guardianship rather than termination of parental rights.[3] Iowa Code section 232.116(3) provides:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
>       . . . .
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

This section is permissive rather than mandatory, that is, it is within the juvenile court's discretion to decline to terminate parental rights if any of the factors in subsection three are present. *See P.L.*, 778 N.W.2d at 41. Based on the unique circumstances of each case and the best interests of the children, we must decide whether to apply the factors in this section to save the parent-child relationships. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993).

Although the mother clearly loves the children, there is no evidence the mother's relationships with the children are so close it would be detrimental to the children if termination occurred. The mother has been nearly nonexistent from

---

[3] The State claims the mother failed to preserve error on these claims because they were not raised and decided by the juvenile court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (observing that an issue is preserved for review if it has been raised and decided by the district court). On our de novo review, we elect to bypass this error preservation concern and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error preservation problem and proceeding to the merits of the appeal).

the children's lives for the past year, and she acknowledges cannot assume parenting responsibilities now. The children have been in a safe and stable home with the mother's sister for the past year. Their behaviors are improving, they are doing better in school, and they are bonded to their caretakers.

We further conclude that considering the children's young age and need for permanency, a guardianship is not in their best interests. Permanency cannot be established by a guardianship. The "determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family member to take the child." *C.K.*, 558 N.W.2d at 174. The children continue to suffer from the disruption their mother's actions have caused them, and they should not have to wait in limbo while their mother attempts to put her life in order. No exception or factor contained in section 232.116(3) applies to make termination of the mother's parental rights unnecessary in this case.

## IV. *Conclusion*

There is clear and convincing evidence that grounds for termination exist, termination of parental rights is in the children's best interests, and no consequential factor weighing against termination requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**