**IN THE COURT OF APPEALS OF IOWA**

No. 15-0286
Filed July 9, 2015

**IN THE INTEREST OF N.G. and S.G.,**
**Minor Children,**

**J.G., Father,**
**Appellant,**

**D.G., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, William A. Price, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**


Bruce Stoltze Jr. of Stoltze & Updegraff, P.L.C., Des Moines, for appellant father.

Tammy Westhoff Gentry of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, John Sarcone, County Attorney, and Kevin Brownell, Assistant County Attorney, for appellee State.

Congarry Williams of the Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

A mother and a father separately appeal the termination of their parental rights. The mother contends the statutory factors for termination were not proved and argues termination was not necessary because the children were placed with relatives. The father maintains termination of his parental rights was not in the children's best interests.

In May 2014, the juvenile court denied the first petition for termination of parental rights, expecting that reunification with the mother was imminent and that the father would soon be paroled. Neither of those events occurred. A new petition to terminate parental rights was filed in October 2014 and, on February 5, 2015, the juvenile court terminated both parents' parental rights. On our de novo review, we find clear and convincing evidence to support termination of each parent's rights under Iowa Code section 232.116(1)(f) (2013): these children are both older than four, have been adjudicated children in need of assistance (CINA), have been out of their parents' care since February 2013, and cannot be returned to either parent presently. Moreover, we find termination of parental rights will best provide the children with permanency and no statutory factor precludes termination. We therefore affirm on both appeals.

**I. Background Facts and Proceedings.**

The mother and father were married and had two children together: N.G., born in April 2006; and S.G., born in August 2009. On December 20, 2012, the Iowa Department of Human Services (DHS) became involved with N.G. and S.G. when the father was reportedly caring for them while under the influence of methamphetamine. We borrow the following recitation of background facts, as

explained in the juvenile court's May 6, 2014 order denying an earlier termination-of-parental-rights petition:

> The CINA cases arose with a petition filed 22 January 2013. It alleged the children's father used illegal drugs marijuana, methamphetamine, and OxyContin; that their mother suspected his drug use but did nothing about it; that the mother, on probation for theft, provided a clean drug screen; that the father was in jail in Dallas County and had a Polk County arrest warrant for theft; that the father had trouble with law enforcement in 2012 for a domestic abuse altercation with [the mother]. The court on 22 January 2013 entered a temporary *ex parte* no contact order against [the father].
>
> After the court scheduled hearings and appointed counsel for the children and counsel for each parent, Polk County Attorney's Office applied on 1 February 2013 for temporary removal of the children. They alleged [the father] had an extensive substance abuse history and unresolved criminal issues which resulted in his being taken into custody. The court placed the children with [the mother].
>
> At the adjudication hearing, the court stated that it adjudicated the two children on three grounds, under the authority of [Iowa Code] § 232.2(6)(b), § 232.2(6)(c)(2), and § 232.2(6)(n) "for the reasons set forth in the Petitions. The father is abusing methamphetamine and other drugs and is in jail. The mother failed to exercise a reasonable degree of supervision by exposing the children to an abusive relationship." . . .
>
> Following the CINA disposition hearing 1 May 2013, the court found the father did not participate because he was on the run. Those taking part agreed to the DHS case plan. The court found it "disappointing that [the mother] has chosen to engage in a relationship," apparently referring to the scuffle between [the father] and the boyfriend of [the mother]. Noting missed drug screens for her probation officer, which put [the mother] at risk of arrest herself, the court continued placement with her to avoid a return to the father, with his unresolved addiction and violence problems.
>
> Only a week later, however, the parties had another hearing which concluded the following week. The hearing resulted in change in placement to the children's maternal great grandmother, Patty [G.] The change stemmed from actions by police and a social worker 26 April 2013, when they entered [the mother]'s apartment to find Toby [J.], the boyfriend, hiding in her bedroom closet in his underwear. He told police he was there to protect the family from [the father]. The court identified him as the boyfriend who scuffled with [the father], mentioned at the disposition hearing 1 May 2013. The court found there was "a faint odor of marijuana within the apartment." Police found four items of drug paraphernalia in a

dresser: needles, syringes, a spoon, and a pipe. The court did not believe [the mother]'s denial and explanation. The court found that she had dyed her hair several times during the course of the case, suggesting an effort to alter her hair stat drug tests. The court observed her "to be jittery and unresponsive during her testimony. These behaviors did not seem consistent with her conduct in earlier hearings when she was functioning better." The court also found not credible [the mother]'s claim that she was only friends with Toby [J.], willing to stay away from him. The court found her claims not credible because of his participation in the apartment lease, their amorous telephone conversations recorded by the jail, and their history of using drugs together. The court found that, whether [the mother] was actively using drugs, or allowing others to use them in her apartment in the presence of the children, she was either keeping dangerous drug paraphernalia within their reach or had so little control over her own home that she had items present without knowing it. It posed further adjudicatory harm to the children. It meant the children were imminently likely to suffer the harms of improper supervision, exposure to violence, and exposure to drugs if returned to the [the mother] at that time. Therefore the court ordered the children to remain with Patty [G.] . . .

At the CINA permanency hearing 2 January 2014, the court found that [the mother] had become pregnant by Toby [J.], the boyfriend mentioned earlier, and had tested positive for marijuana following conception. [The mother] initially denied any substance abuse problem, but nevertheless attended three of six substance abuse classes at Powell. She completed domestic abuse violence classes. She had a job, but lacked suitable housing. The court found she had been dishonest about her relationship with Toby [J.], having asked N.G. to keep the pregnancy secret.

N.G. had become distressed following a semi-supervised visit with her, and began to want his visits fully supervised. At the time of the January 2014 hearing, [the father] remained in prison, with a release date in 2018. He hoped for possible parole in June 2014, likely to a halfway house. He availed himself of classes and services in prison. The court found [the mother] still could not provide minimally adequate parenting, so directed the children to remain in the care of . . . Patricia [G.] . . . .

When the children had been out of the parents' custody for twelve months, the State filed a petition to terminate both parents' rights. After a hearing, the juvenile court denied that termination petition, expecting that reunification with

the mother would occur in the near future and that the father was soon to be paroled. In its May 2014 ruling the court wrote:

> The State of Iowa seeks to terminate the parental rights of a mother who works a full time job, who has training set for promotion in her employment, who has rented a home large enough for her and her family, who has no serious substance abuse addiction, who has completed counseling, and whose counselor and social worker credit her for good parenting skills. Those individuals praise her for various choices she has made, even though they do not approve of her taking a new boyfriend, nor her temporarily concealing that fact from them and from disapproval. . . .
> The State of Iowa seeks to terminate the parental rights of a father who, although in prison, has demonstrated his interest in the children and made every effort possible for a man in prison to maintain ties and communicate with them, and to participate with programs to improve himself and prepare for release to the world of work. They seek to terminate the parental rights of a father while their own witnesses disprove elements of each statutory ground alleged against him.

The juvenile court ordered the children were to remain in the custody of DHS and ordered DHS to make appropriate referrals for N.G. The mother was to continue to participate in substance abuse services. Both parents were to abstain from mood-altering substances and demonstrate abstention. The father was ordered to "continue to work on his rehabilitation, parole when he gets it, and success in his community as rapidly as conditions permit." The court ruled visits were to transition "steadily and promptly to semi supervised, unsupervised, and overnight visits. The parties shall prepare for their return to her custody and placement."

On June 4, 2014, the mother filed a motion to enforce the May 6, 2014 order requesting reunification with her children. On June 20, 2014, the court found that DHS was continuing to progress toward reunification of N.G. and S.G. with the mother and did not modify the previous order. A review hearing was

held on August 5, 2014, after which the court ordered that visitation between the mother and the children could increase and be unsupervised so long as the mother's paramour, Toby J., was not present with the children at any time or in the home at any time.

On August 13, 2014, a family team meeting was held. The children reported that just prior to this meeting they witnessed the mother pushing Toby J. and that he then tried to break into the mother's home. At the meeting, Toby J. admitted to relapsing and completed a drug screen that was positive for methamphetamine/amphetamine. The mother and Toby J. informed DHS they were not together anymore.

On August 20, 2014, DHS informed the mother she would need to submit to a drug test before the children could be returned to her care. The mother asked to perform the test the following day but was then unable to provide a urine specimen. DHS told her she needed to have a drug screen patch applied that day. The mother then left town and did not see N.G. or S.G. for almost three weeks. DHS located her in Iowa City with Toby J.'s parents and her newborn child.

On October 13, 2014, the State filed this petition to terminate both parents' parental rights. With respect to the mother, the State asserted grounds for termination existed under Iowa Code section 232.116(1)(d) and (f); as to the father, the State contended grounds existed under section 232.116(1)(b), (d), (e), and (f).[1]

---

[1] Iowa Code section 232.116(1) provides, in pertinent part, the court may terminate if:

At the December 4, 2014 termination hearing, the father remained incarcerated with a 2018 discharge date. However, his prison counselor testified the father was in ongoing programming (including a parenting class and a family violence prevention class) and would be recommended for parole in January or February 2015. The father testified that upon parole, his plan was to move to a residential recovery program where children would not be allowed to reside.

---

(b) The court finds that there is clear and convincing evidence that the child has been abandoned or deserted.

. . . .

(d) The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

(e) The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. . . .

(f) The court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother testified she was working and had a residence with rooms for each child. She had reliable transportation, a license, and insurance. She testified she made a mistake leaving in August and staying away from the children for three weeks. She acknowledged she used marijuana while pregnant with Toby's child (despite having previously denied using and insisting that positive drug screens were in error). The mother stated she began going to therapy willingly in October; she acknowledged that she had attended therapy before but had not believed she was in need of therapy. She testified she was engaged to Toby J., he was going through a relapse prevention program, and she felt it was safe for the children to be around him.

On February 5, 2015, the juvenile found the State had proved all the asserted grounds for termination as to both parents. The court also found termination was in the best interests of the children and no statutory factor in section 232.116(3) precluded the termination of the parents' rights.

The mother and the father separately appeal.

## II. Scope and Standard of Review.

We review termination proceedings de novo review. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

## III. Father's appeal.

The father asserts there was testimony he was to be paroled in the near future and, in light of the steps to better himself he had taken while in prison,

termination of his parental rights was not in the children's best interests. We commend the father for the progress he has made—attaining his GED, attending classes on domestic abuse and parenting, and participating in substance abuse counseling and the Narcotics Anonymous program. However, these two children have been out of parental custody for more than two years at this point. The father effectively received an extension of time when, on May 6, 2014, the juvenile court denied the earlier petition to terminate the father's rights. The court then noted the father was soon to be paroled. However, that release from custody did not occur. Even if the father were to be released in the near future, the children could not be returned to his care for some time.

There is clear and convincing evidence supporting termination under Iowa Code section 232.116(1)(f): these children are both older than four years of age; have been adjudicated children in need of assistance; have been out of the father's custody since February 2013; and the record is clear that he was incarcerated at the time of the termination hearing, and, therefore, was not in a position to have custody of the children then or in the near future.

Our supreme court has stressed that "[o]nce the [statutory] limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). These children have waited long enough for their father to be available and able to provide safe and stable care. *See D.W.*, 791 N.W.2d at 707.

**IV. Mother's appeal.**

The mother contends termination was not proper. The mother acknowledges she "did have a setback when she went to Iowa City," but argues more weight should be given to "the significant evidence that supported the return" of the children to her care. We disagree. The day before the mother was to have the children returned to her care in August she did not comply with drug testing and left the area for three weeks. This had a harmful effect on the children. By her own account, the mother began taking her therapy seriously a month and a half before the termination hearing.

We adopt these juvenile court findings:

> The prevailing safety issues throughout the child in need of assistance and the termination of parental rights proceedings has been the children being exposed to violence and exposed to drugs. The children were removed because the mother could not keep them safe from exposure to illegal drugs, criminal conduct, improper supervision, and violence. The mother chose to engage in a relationship with a man [Toby J.] with a history of violence and unresolved substance abuse issues. The mother became pregnant by this man and ultimately the mother gave birth to this child's sibling, H.J. The sibling ultimately had to be removed from the mother's custody as she could not keep him safe in spite of the services being provided to her in these children's child in need of assistance matters and the sibling's child in need of assistance matter.
> The mother has been offered individual therapy, therapy for both children, five substance abuse evaluations, random drug screens, Family Safety, Risk, and Permanency services, family team meetings, domestic violence classes, and supervised interactions. Most of the aforementioned services have been provided since the time of the children's removal eighteen months ago. In spite of the services offered and the significant amount of time that the services were provided to the mother, the mother still is unable to safely parent these children. . . . The mother continues to engage in a relationship with a man with a violent criminal history and that children have expressed fear from during the child in need of assistance proceedings. The Court finds that the mother has

unresolved substance abuse issues given the number of positive drug screens and the Court cannot ignore the drug screens that the mother refused to provide when requested by [DHS].

The mother's belief that it was safe for the children to be around Toby J. gives us pause, particularly in light of the mother's past minimization of risks posed to the children. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past performance may be indicative of the quality of the future care that the parent is capable of providing). There is clear and convincing evidence that grounds for termination of the mother's parental rights exist under Iowa Code section 232.116(1)(f).

The mother argues that the court need not terminate her parental rights because the children are placed with relatives and she and the children share a close bond. Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. Iowa Code § 232.116(3). "A finding under subsection 3 allows the court not to terminate." *A.M.,* 843 N.W.2d at 113. But the "'factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993).

Although section 232.116(3)(a) allows the juvenile court not to terminate when a "relative has legal custody of the child," Iowa Code § 232.116(3)(a), these children though placed with relatives are not in the legal custody of their great grandparents. The children are in the legal custody of DHS and thus section 232.116(3)(a) is not applicable. *See A.M.*, 843 N.W.2d at 113.

Section 232.116(3)(c) allows the court not to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We do not find the bond here such that it outweighs the children's need for stability. As stated by the juvenile court, these children "desperately need true permanency," which can be provided by termination of parental rights and adoption.

We affirm the termination of both parents parental rights.

**AFFIRMED ON BOTH APPEALS.**