# IN THE COURT OF APPEALS OF IOWA

No. 18-0568
Filed July 18, 2018

**IN THE INTEREST OF P.J., V.P, V.P., and V.P.,**
**Minor Children,**

**C.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

A mother appeals from the termination of her parental rights to her children.

**AFFIRMED.**

Jennifer Triner Olsen of Olsen Law Office, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Martha L. Cox, Bettendorf, guardian ad litem for minor children.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights to her children,[1] pursuant to Iowa Code section 232.116(1)(d) and (f) (2017).[2]

The mother claims that the evidence does not show termination of parental rights is in the best interest of the children. She argues siblings should be kept together, reasonable efforts were not made by the State, and the mother-child relationship weighs against termination of her parental rights.

**I. Background Facts & Proceedings.**

C.M. is the mother of P.J., born in December 2009; Vo.P., born in April 2012; and twins Va.P. and Ve.P., born in August 2013.[3] In May 2015, the department of human services (DHS) investigated concerns of abuse against P.J. by the father of Vo.P., Va.P., and Ve.P. The father admitted to such abuse and was arrested in July 2015. After the incident of abuse, services were offered to the mother to address the risk of abuse to the children, domestic violence, lack of appropriate housing, chaotic lifestyle, and unmet mental-health needs. Services went largely unutilized and the whereabouts of the family were not well known for some time.

---

[1] The parental rights of two putative fathers were also terminated. The putative fathers do not appeal.

[2] Section 232.116(1)(d) allows the court to terminate parental rights if the court has previously adjudicated a child to be a child in need of assistance (CINA) and "the parents were offered or received services to correct the circumstance which led to the adjudication and the circumstance continues to exist despite the offer or receipt of services."

Section 232.116(1)(f) allows the court to terminate parental rights if a child four years or older has been adjudicated CINA, has been removed from the parents' physical custody for the requisite statutory period, and cannot be returned to the parent at present.

[3] The mother has five other children. Her parental rights to three children were terminated by the state of Kentucky. J.J., born in 2002, is in an out-of-home placement. J.M., born in 1999, is a teenager who is capable of self protection and is living with the mother.

In November 2015, the children were adjudicated to be in need of assistance pursuant to Iowa Code section 232.2(6)(b), (c)(1), (c)(2), (e), (f), (g), (m), and (n) (2015). The children have remained in foster care since their most recent removal and placement on February 24, 2016. P.J. is in one foster home, brothers Vo.P and Ve.P. are in a foster home together, and Va.P. is in a third foster home.

During these juvenile court proceedings, the mother has moved multiple times and had various employment. Neither the housing nor the employment ever proved long term or sufficient to provide the stability necessary for the children.

The mother underwent a substance-abuse and psychological evaluation. No substance-abuse treatment was recommended. The mother was diagnosed as intellectually low functioning. In response to the psychological evaluation results, Lutheran Services, as Family Safety, Risk and Permanency (FSRP) service provider, utilized an "easy learning nurturing handbook" to assist in parenting education. Since July 2017, the mother has missed sixteen of thirty-eight scheduled visitations.

On February 28, 2018, a hearing was held to determine if parental rights should be terminated. The court terminated the mother's parental rights to all four children by an order filed on March 16, 2018.

**II. Standard of Review.**

We conduct a de novo review of termination of parental rights proceedings. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Although we are not bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An

order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *Id.* Evidence is considered "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

**III. Analysis.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *See P.L.*, 778 N.W.2d at 39. The court must initially determine whether a ground for termination under section 232.116(1) is established. *Id.* If a ground for termination is established, the court must next apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. *Id.* If the statutory best-interest framework supports termination of parental rights, the court must finally consider if any statutory exceptions or factors set out in section 232.116(3) weigh against termination of parental rights. *Id.*

**A. Grounds for Termination.**

The mother does not challenge the grounds on which the court found reason to terminate her parental rights. Therefore, we do not need to review such grounds and move on to the second part of the analysis. *See id.* at 40.

**B. Factors in Termination.**

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of Iowa Code section 232.116(2). *Id.* at 37. In determining the best interest, the court's primary considerations are "the child's safety, the best placement for furthering the long-

term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child." *Id.*

Notwithstanding the mother only raised one issue—best interests—she also contends the State has not made reasonable efforts targeted to her intellectual deficits. However, we adopt the trial court's findings that the mother received or was offered services specific to her needs. The case plan was modified after DHS discovered the mother's intellectual deficits. To assist the mother, DHS then modified the materials used for lower functioning individuals and, in addition, provided "hands on guidance and redirection" during visits. And when the mother was not attending visits, a DHS worker spoke with her to explore why she was not attending and offer additional help. Schedule changes were offered, as were bus tokens. A service provider gave lists of possible housing options to the parents and either took them to look for housing or met them at residences.

The State has shown that returning the children to the mother is not in their best interest. The mother lacks the resources, suitable housing, and employment to provide for the children's physical, emotional, and mental needs despite receiving services for more than two years. *See D.W.*, 791 N.W.2d at 708 (noting that lower mental functioning may be a contributing factor to a parent's inability to provide a safe and stable home). The mother's pattern of past behavior supports the conclusion she will not acquire the necessary resources in the near future. When the State proves a ground for termination, we cannot postpone a permanent stable home for a child in hopes that the parent will eventually be able to provide such stability long term. *In re* A.S., 906 N.W. 2d 467, 474 (Iowa 2018).

We note, too, that the children's physical, emotional, and mental needs are being met in their respective foster homes. Each child is safe and doing well, and adoption offers the best chance of permanent stability.

**C. Exceptions or Factors against Termination.**

Finally, we give consideration to whether any exception or factor in section 232.116(3) applies to make termination unnecessary. In her argument on the best-interest issue, the mother also contends her parental rights should not be terminated due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c) (noting the presence of evidence "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship" is a factor that may weigh against termination). The factors weighing against termination in section 232.116(3) are permissive, not mandatory. *See P.L.*, 778 N.W.2d at 38. The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993).

We acknowledge the mother and the children have a bond, but it has been adversely affected by the mother's inconsistent visits including multiple visits that were cancelled last minute. Whatever bond continues to exist, it does not overcome the children's need for permanency and security in a stable, suitable home.

We also acknowledge that we prefer to keep siblings together. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). Adoption may or may not allow them to reunite. Yet, these children have been separated for more than a year,

their lives before this last separation have been chaotic and unstable, and the mother cannot provide them a home at present.  We find that termination of the mother's parental rights is in the children's best interests.  We, therefore, affirm the termination of her parental rights.

**AFFIRMED.**