**IN THE COURT OF APPEALS OF IOWA**

No. 14-0783
Filed August 13, 2014

**IN THE INTEREST OF Q.E., C.E., and K.E.,**
**Minor Children,**

**A.V., Mother,**
**Appellant,**

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A mother appeals the order terminating her parental rights. **AFFIRMED.**

Brenda Drew-Peeples of Drew-Peeples Law Firm, Davenport, for appellant mother.

Timothy Tupper, Davenport, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee State.

Lauren Phelps, Davenport, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A mother appeals from the juvenile court's order terminating her parental rights to three of her children.[1]  We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in January 2013, when the mother contacted DHS because she did not feel she could parent her children safely.  The mother has six children: K.E., born in 2005; Q.E., born in 2007; C.E., born in 2009; A.E., born in 2010; A.E., born in 2011; and S.E., born in 2013.  The youngest three children have since been placed in the care of their father.  The mother's parental rights to her oldest three children, who have a different father than her younger children, are at issue in this proceeding.

When the mother contacted DHS, she indicated she was having violent thoughts toward other people (not her children), and that she was depressed and suicidal.  The mother was also homeless and she was concerned about the welfare of the children.  The mother was solely responsible for all her children, did not receive financial or emotional support from the fathers, and was unable to maintain a job for more than a few weeks.  Prior to the mother's contact with DHS, the children had been in and out of the mother's care, shelters, and "Safe Families" placements since 2012.

The children were adjudicated in need of assistance in May 2013.  K.E. and Q.E. remained placed with the same foster family they had been placed with

---

[1] Per order filed July 14, 2014, the Iowa Supreme Court denied the father's motion to join the mother's appeal and dismissed his appeal as untimely.

in December 2012, which was a pre-adoptive placement. C.E. was placed with a different foster family that was not a pre-adoptive placement. The children's father did not participate in services or communicate with caseworkers and did not have any regular or meaningful contact with the children. Services were provided to the family to eliminate the need for removal of the children from the mother's care, and supervised visitations were scheduled. Specifically, the mother was directed to attend therapy and take medication for her outstanding mental health issues, including her "severe depression."

The juvenile court entered a permanency order in October 2013. The court observed the mother struggled to attend all visitations, and when she did, had difficulty managing more than a few of the children at a time. The court found visitation was disruptive for the children due to the mother's displays of anger toward caseworkers and inappropriate behavior toward the children. For example, the mother advised K.E. and Q.E. they could return to her care if they misbehaved. She also taught the children that cutting themselves was a way to deal with anger and pain. K.E. and Q.E.'s behavior, which was problematic to begin with, regressed after visits with the mother. C.E. had significant cognitive delays such that the mother had difficulty interacting with him let alone meeting his needs. The mother refused to sign the necessary releases to allow the children to be seen by a child psychologist, and refused to meet with the children's therapists. As the court accurately summarized, the mother "repeatedly allowed her anger to override what [was] best for the children."

The court observed the mother was "extremely slow" in working toward addressing case plan goals. The mother had begun attending therapy, albeit

irregularly and was not taking her prescribed medication consistently. She was unable to maintain employment and had not secured a stable living arrangement. The court observed the mother made no request for services that were not provided. In light of the mother's overall lack of progress toward any case plan goals and the detrimental impact that contact with the mother had on the children, the court waived reasonable efforts in regard to the mother and changed the permanency goal from reunification to termination and adoption for K.E., Q.E., and C.E. The mother's visitations with the children were discontinued in October 2013.

The State filed a petition to terminate parental rights in January 2014. The termination hearing was held in April 2014. The juvenile court observed the children's behavioral and cognitive issues were markedly improved by remedial services once the children received them, and the children had a "huge reduction" in anger outbursts and destructive behavior after visitation with the mother was stopped. At the time of the termination hearing, K.E. and Q.E. remained with the same family in which they had been placed in December 2012—a family that expressed its willingness and ability to adopt the children. The court observed that although C.E.'s placement was not pre-adoptive, the child had demonstrated "great progress since being removed from his mother," and was a young and "now adoptable" child.

The court acknowledged the mother's recent participation in services. The mother testified she had attended therapy regularly for the past few months and had experienced "a lot of breakthroughs in therapy." She further testified she had switched medication a few weeks before the termination hearing and was

taking that medication consistently. The mother testified she was now living with her boyfriend of several months in his mother's home, and that for several weeks she had been employed in a job she enjoyed. The mother testified she believed she could take care of and provide for her children if they were returned to her care. Her boyfriend's mother also testified, stating she would be a "support system" to help the mother's reunification with her children, including allowing the children to live in her home along with the mother. Neither the mother's boyfriend nor his mother had met the children, and they had only known the mother for approximately four months. The guardian ad litem recommended termination of the mother's parental rights.

Following the termination hearing, the juvenile court entered its order terminating the mother's parental rights to pursuant to Iowa Code sections 232.116(1)(d) and (f) (2013), and additionally pursuant to section 232.116(1)(i) as to K.E. and Q.E. The mother appeals.

## II.     *Scope and Standard of Review*

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

### III. Discussion

*A. Grounds for Termination*

We must first determine whether a ground for termination under section 232.116(1) is established. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The mother disputes the grounds to terminate her parental rights under each ground found by the juvenile court. "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling," *see In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2000), and we elect to address the mother's contention that statutory grounds under section 232.116(1)(f) have not been proved by clear and convincing evidence.

Under that section, the State must show the children are four years old or older, have been adjudicated in need of assistance, have been removed from the home for a requisite period of time, and the juvenile court could not return the children to the parent's custody pursuant to section 232.102. *See* Iowa Code § 232.116(1)(f) (setting forth the statutory requirements for termination). The mother challenges the court's finding that the children could not be returned to her care "at the time of the termination hearing" or "in [a] reasonable period of time." Therefore, at issue is whether the State presented clear and convincing evidence the children could not be returned to the mother's care pursuant to section 232.102. *See id.* § 232.116(1)(f)(4). The State meets its burden to prove this element if it presents clear and convincing evidence the children have suffered or are imminently likely to suffer an adjudicatory harm upon their return. *See id.* §§ 232.116(1)(f)(4), .102(5)(a)(2), and .2(6)(c); *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).

This case first came to DHS's attention in January 2013 when the mother contacted DHS because she did not feel she could parent her children safely. Throughout 2012, the children had been in and out of the mother's care as she struggled with unaddressed mental health issues and providing the children a stable home. We commend the mother for realizing her children were suffering and for reaching out to DHS. Unfortunately the mother's actions thereafter to correct these circumstances were not as proactive.

For nearly one year, the mother did little to address her mental health issues. She did not attend therapy regularly or take her prescription medications consistently. Her unaddressed mental health issues detrimentally affected her cooperation with caseworkers and her relationship with her children. Indeed, the mother was so disruptive during supervised visitations, and the children were affected so adversely from her behavior, that visitations were discontinued in October 2013. It was not until January 2014 that the mother began to show some initiative and begin to follow through with the case plan requirements. Coincidentally, this was also around the time the State filed a termination petition. Meanwhile, the children were adjusting to placement outside the mother's care, K.E. and Q.E.'s behavior problems nearly ceased, and C.E.'s cognitive delays markedly improved.

In light of the mother's testimony concerning her recently-acquired employment, supportive relationships, housing, and dedication to mental health treatment, we are truly hopeful the mother will find sustained stability and improvement of her mental health issues. But, her current efforts are simply too little, too late for these children. "A parent cannot wait until the eve of

termination, after the statutory time periods for reunification have passed, to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Under these circumstances, the mother's short-term attention to her mental health needs do not rectify concerns about her longstanding stability and inability to parent her children safely, and the children cannot be returned to her care without an imminent risk of suffering an adjudicatory harm.

We further conclude an additional period of rehabilitation in this case would not correct the situation. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see A.B.*, 815 N.W.2d at 778 (noting the parent's past conduct is instructive in determining the parent's future behavior). Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). At some point, as is the case here, the rights and needs of the children rise above the rights and needs of the parent. There is no reason to delay the children the permanency they need and deserve. We therefore affirm the juvenile court's determination that termination of the mother's parental rights was proper under Iowa Code section 232.116(1)(f).

B.     *Factors in Termination*

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests, this court's primary

considerations are "the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child." *Id.*

The mother contends termination of her parental rights is not in the best interests of the children because it would sever "the sibling group [and] the sibling relationship between these children and their half sibling group [of which] the mother retains parental rights."[2]  Indeed, we prefer to keep siblings together when possible.  *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).  But the paramount concern is the children's best interests.  *See id.*  Here, K.E. and Q.E. have lived together in a foster home since December 2012 with a family that wishes to adopt them.  C.E. is young, adoptable, and has responded well to placement in foster care.  None of the mother's other children (who were very young when they were last living with K.E., Q.E., and C.E.) reside with her.  Because we agree with the juvenile court's finding that termination of the mother's parental rights is in the best interests of the children and would best provide for the children's long-term nurturing and growth, we decline to reverse the termination on this ground.

## C.  *Factors Against Termination*

Finally, we give consideration to whether any exception or factor in section 232.116(3) applies to make termination unnecessary.  We have discretion, based

---

[2] There is no indication this issue was raised in the juvenile court, and accordingly, the mother's claim is not preserved for our review.  *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 20-21 (Iowa 2013) ("Our error preservation rules provide that error is preserved for appellate review when a party raises an issue and the district court rules on it.").  On our de novo review, we elect to bypass this error preservation concern and proceed to the merits.  *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error preservation problem and proceeding to the merits of the issue raised on appeal).

on the unique circumstances of each case and the best interests of the children, whether to apply the factors in this section to save the parent-child relationships. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993). No exception or factor contained in section 232.116(3) applies to make termination of the mother's parental rights unnecessary in this case.

## IV. *Conclusion*

There is clear and convincing evidence that grounds for termination exist, nothing in the record suggests additional time would correct the circumstances leading to the children's adjudication and removal, termination of parental rights is in the children's best interests, and no consequential factor weighing against termination requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**