# IN THE COURT OF APPEALS OF IOWA

No. 16-2187
Filed March 22, 2017

**IN THE INTEREST OF Z.G.,**
**Minor child,**

**R.H., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.


　　A father appeals the termination of his parental rights to his child.
**AFFIRMED.**


　　Aaron H.R. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant Attorney General, for appellee State.

　　Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor child.


　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

The father appeals from the termination of his parental rights to his child, Z.G.[1]  He claims: (1) the State failed to prove the statutory grounds for termination; (2) termination is not in the child's best interests; (3) termination was not proper because of the closeness of the bond between the father and the child; and (4) his imprisonment did not necessarily require termination of parental rights.  He also claims the juvenile court erred in failing to grant him a six-month extension.

We entered an order for further briefing on the issue of whether Z.G. was "removed from the physical custody" of the father in light of the Iowa Supreme Court's opinion interpreting the "removal" aspect of Iowa Code section 232.116(1)(h)(3).  *See In re C.F.-H.*, 889 N.W.2d 201, 203–08 (Iowa 2016).  *C.F.-H.* was filed after the juvenile court's order terminating the father's rights.  The father and the State filed additional briefs.

The child was born with amphetamines, methamphetamine, cocaine, hydrocodone, and marijuana in his system.  He was removed four days later from his mother's care, with the mother's consent.  At that time, no father had been identified.  Paternity testing confirmed R.H. as the father prior to the child in need of assistance (CINA) adjudication hearing, but he was not served with notice of the hearing.  The child was adjudicated a CINA pursuant to Iowa Code section 232.2(6)(c)(2), 232.2(6)(n) and 232.2(6)(o) (2016).[2]  Sometime after the CINA

---

[1] The mother's parental rights to this child were also terminated.  She is not a party to this appeal.
[2] Applicable here, a CINA is:  a child who has suffered or is imminently likely to suffer harmful effects as a result of the failure of the child's parent to exercise a reasonable

adjudication hearing the father was served with the CINA petition and adjudication order. He and his attorney attended the first dispositional hearing where the child was confirmed to be a CINA. The father attended by telephone and his attorney was present at the subsequent dispositional review hearing. The father participated by telephone and his attorney was present at the permanency/termination hearing.

The father was incarcerated at the time of the child's birth and remained incarcerated throughout the life of this case. Although his tentative release date from the Newton Correctional Facility was scheduled for January 11, 2017, he was also on a federal detainer after having pled guilty to two counts of bank robbery. His sentencing in federal court was scheduled for January 23, 2017. The father hoped to be released from federal custody in three to three-and-one-half years, although he expected a sentence of fifty to seventy months pursuant to the federal sentencing guidelines.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We will uphold an order terminating parental rights only if there is clear and convincing evidence establishing the statutory grounds for termination of the parent's rights. *See In re*

---

degree of care in supervising the child, Iowa Code §232.2(6)(c)(2); whose parent's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care, §232.2(6)(n); and in whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent's, §232.2(6)(o).

*C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.*

Termination of parental rights under Iowa Code chapter 232 (2016) follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). First, the court must determine if a ground authorizing the termination of parental rights under section 232.116(1) has been established. *See id.* at 40. Second, if a ground for termination is established, the court must apply the framework set forth in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. S*ee id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *See id.* at 41. The factors set forth in subsection three are permissive and not mandatory. *See A.M.*, 843 N.W.2d at 113.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h). When the juvenile court terminates parental rights on more than one ground, we may affirm the order on any ground we find supported by clear and convincing evidence in the record. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to address the ground for termination under section 232.116(1)(h). Under this provision, the court may terminate the rights of a parent to a child if: (1) the child is three years old or younger, (2) the child has been adjudicated a CINA under section 232.96, (3) the child has removed from the physical custody of the child's parents for at least six of the last twelve months or the last six consecutive months and any trial period in the home

has been under thirty days, and (4) "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h). "At the present time" refers to the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111. It is undisputed the first two elements are met. The child was under three and was adjudicated a CINA pursuant to section 232.96.

On appeal, the father asserts termination is not proper because the record does "not substantiate the existence of the continued existence of the conditions that led to the adjudication." The father's assertion is flawed. To be sure, to satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance." *Id.* § 232.102(5)(a)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). But, "a child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). In other words, the adjudicatory harm at the time of the termination hearing need not be the same one that supported the child's initial removal from the home. *See id.*

A parent's imprisonment may be the basis of adjudicatory harm. Iowa Code § 232.2(6)(n) (stating a parent's imprisonment results in the child not receiving adequate care). This was one of the grounds upon which the child was adjudicated a CINA. It is also one of the grounds supporting the juvenile court's termination of the father's parental rights as the court concluded the child could

not be returned to the father at the time of the termination hearing without subjecting the child to the adjudicatory harm resulting from father's incarceration.

Although not raised by the father in his petition on appeal, the third element—whether the child was removed from the physical custody of the father—was the subject of additional briefing requested by this court. Our supreme court recently interpreted the "removal" requirement listed in Iowa Code section 232.116(1)(h)(3). *See C.F.-H.*, 889 N.W.2d at 203–8. In *C.F.-H*, the parties were never married but they resided together with their minor child. *Id.* at 202, 208 (Mansfield, J., dissenting). The Iowa Department of Human Services (DHS) became involved with the family in 2011 after an incident of domestic violence between the mother and the father. *Id.* at 202. DHS made a founded child abuse assessment against the father, the parties engaged in voluntary services, and the case was closed in June 2012. *Id.* The child was not removed from the home during the initial DHS involvement. *Id.*

In August 2012, DHS made another founded child abuse assessment against both parents. *Id.* C.F.-H was adjudicated a child in need of assistance in November 2012, temporary physical custody of the child was placed with the mother, and the father left the family home pursuant to the DHS safety plan. *Id.* at 202, 208 (Mansfield, J., dissenting). The father was still allowed visitation. *Id.* at 208 (Mansfield, J., dissenting). Following the father's continuing refusal of services, his parental rights were terminated in 2016. *Id.* at 202. The father never resided with C.F.-H from the time of the father's move from the home to the termination trial. *Id.* at 210 (Mansfield, J., dissenting). The majority held the child was never "removed" from the father pursuant to section 232.116(h)(1)

because his lack of physical custody was insufficient to satisfy the statutory removal requirements. *Id.* at 207. The court declined to address "whether a removal of the child from one parent is sufficient to support termination of parental rights of a noncustodial parent." *Id.* at 207 n.2.

The dissent asserted that under the facts of the case the child was removed because he lived with the father prior to DHS's recommendation that physical custody be placed with the mother. *Id.* at 212 (Mansfield, J., dissenting). In response, the majority stated, "Although the dissent makes a plausible argument around the issue of whether C.F.-H. was, in fact, actually removed from physical care, any contention that C.F.-H. had been so removed from physical custody has not been preserved." *Id.* at 208. The majority explained the State conceded the child had always remained in the custody of the mother, and had never been in the father's physical custody. *Id.*

Here, there is no dispute—nor could there be—that the child has never been in the father's custody. At first blush it would appear that under *C.F.-H.* the father's lack of physical custody here would be insufficient to satisfy the statutory requirement of "removal of physical custody." *Id.* at 207. But here, unlike *C.F.-H.*, the child was removed from the physical custody of the mother. Although the majority in *C.F.-H.* expressed no view on the question of whether the removal of a child from one parent is sufficient to support termination of parental rights of a noncustodial parent, we conclude removal of the child from the mother is sufficient to support termination of the father's parental rights.

Section 232.116(1)(h)(3) requires that "the child has been removed from the physical custody of the child's *parents*." (Emphasis added). Our supreme

court has interpreted the word "parents" to mean plural or singular by statutory construction as provided by Iowa Code section 4.1(17). *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992).[3] We have recognized,

> This interpretation aids the State in this case in establishing the third element of Iowa code section 232.116(1)(h)(3) which requires proof the child was removed from the parents' home, or a parent's home, for at least six of the last twelve months, or for the last six consecutive months so long as any trial period has lasted less than thirty days. Because the child had been removed from the mother's care for this period of time, the State need not prove the child was removed from the father's home.

*In re M.S.*, 889 N.W.2d 675, 687 (Iowa Ct. App. 2016) (Danilson, C.J., concurring specially). The majority in *C.F.-H.* does not discuss *In re N.M.*, and only leaves us hanging with its footnote: "We express no view on the question of whether a removal of the child from one parent is sufficient to support termination of parental rights of a noncustodial parent." *C.F.-H.*, 889 N.W.2d at 207 n.2. But the dissent recognizes "[t]his rule is now firmly entrenched in our caselaw." *Id.* at 213 (Mansfield, J., dissenting) (citing *In re H.S.*, 805 N.W.2d 737, 749 (Iowa 2011)). And, not surprisingly, our court has frequently and consistently followed the *N.M.* rule.[4] Because the child had been removed from the mother's care for

---

[3] Iowa code section 4.1(17) provides, "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."

[4] *See, e.g.*, *In re B.S.*, No. 16-1295, 2016 WL 5934014, at *1 (Iowa Ct. App. Oct. 12, 2016); *In re J.M.*, No. 15-1707, 2016 WL 146726, at *2 (Iowa Ct. App. Jan. 13, 2016); *In re J.P.*, No. 15-1084, 2015 WL 5309113, at *3 (Iowa Ct. App. Sept. 10, 2015); *In re B.B.*, No. 15-1036, 2015 WL 4935931, at *2 (Iowa Ct. App. Aug. 19, 2015); *In re G.W.*, No. 14-1990, 2015 WL 576555, at *2 n.2 (Iowa Ct. App. Feb. 11, 2015); *In re C.L.*, No. 14-1973, 2015 WL 408392, at *2 (Iowa Ct. App. Jan. 28, 2015); *In re C.P.*, No. 14-0808, 2014 WL 3513370, at *2 (Iowa Ct. App. July 16, 2014); *In re M.M.*, No. 13-1977, 2014 WL 667794, at *2 (Iowa Ct. App. Feb. 19, 2014); *In re J.N.*, No. 13-1725, 2014 WL 72277, at *1-2 (Iowa Ct. App. Jan. 9, 2014); *In re A.M.*, No. 13-1225, 2013 WL 5486714, at *2-3 (Iowa Ct. App. Oct. 2, 2013); and *In re A.U.*, No. 13-0599, 2013 WL 2646971, at *5 (Iowa Ct. App. June 12, 2013).

the requisite period of time, we conclude it was not necessary for the State to prove the child was removed from the father's care.

There is also clear and convincing evidence the fourth element of section 232.116(1)(h) is satisfied. At the termination hearing, the father admitted he was not in a position to be able to provide for the child. Given the circumstances, that is sufficient evidence authorizing the termination of his parental rights.[5] In any event, we agree with the juvenile court that the State proved by clear and convincing evidence the child could not be returned to the father's care at the time of the termination-of-parental-rights hearing. The record is clear that the father was incarcerated at the time of the termination hearing and would be for the foreseeable future, and, therefore, was not in a position to have custody of the child then or in the near future.

On appeal, the father argues termination of his parental rights is not in the best interests of the child. At the termination hearing, he agreed the child needed permanency and stability and that he was not yet in a position to be able to provide that to the child. Regarding the best-interests issue, the juvenile court concluded:

> In [the father]'s case, the court appreciates and respects his participation in court proceedings; his following his son's life experiences and development over the course of these

---

[5] *See In re K.D.*, No. 16-1778, 2017 WL 108586, at *2 (Iowa Ct. App. Jan. 11, 2017); *In re K.P.*, No. 15-2078, 2016 WL 1703081, at *4 (Iowa Ct. App. Apr. 27, 2016) (citing *In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016), *In re M.R.*, No. 14-1642, 2014 WL 7343520, at *2 (Iowa Ct. App. Dec. 24, 2014), *In re Z.B.*, No. 13-1406, 2014 WL 667596, at *2 (Iowa Ct. App. Feb. 19, 2014), *In re. G.S.*, No. 12-2258, 2013 WL 751298, at *2 (Iowa Ct. App. Feb. 27, 2013), *In re K.B.*, No. 12-1299, 2012 WL 4903052, at *4 (Iowa Ct. App. Oct. 17, 2012), and *In re H.L.*, No. 07-1126, 2007 WL 2710968, at *2 (Iowa Ct. App. Sept. 19, 2007), as examples of cases in which a termination of parental rights was affirmed because a parent admitted the child or children could not be returned to the parent's care at the time of the termination hearing).

> proceedings; and his decision to make the necessary changes in his own life. [The child], at his tender age, simply cannot wait for some as yet undetermined number of years and months to learn whether or not his father can be a permanent parent.
>
> The child's current custodians have demonstrated that they are the best answer to ensure [the child]'s safety; for furthering his long-term nurturing and growth; and for meeting his physical, mental and emotional condition and needs. They are willing to adopt [the child] and provide a permanent home for him.

We agree.

The father asserts, under Iowa Code section 232.116(3)(c), that the closeness of his bond with the child should serve to preclude termination. This factor is permissive, not mandatory. *See In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993), *overruled on other grounds by P.L.*, 778 N.W.2d at 39-40. We may apply the factors precluding termination in our discretion based on the circumstances of each case and the child's best interests. *See id.*

Under section 232.116(3)(c), the court need not terminate parental rights if the court finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The father has met the child exactly once—at a court hearing. The child was then a little over two months old. In an understatement, the juvenile court concluded, "Clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship has not been shown here." We agree and conclude that terminating the father's parental rights would be less detrimental to the child than the harm that would be caused by continuing the parent-child relationship. We decline to apply the "closeness" factor.

Citing *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993), the father contends termination should not necessarily result from imprisonment. True, but the father "cannot use his incarceration as a justification for his lack of relationship with the child. This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." *M.M.S.*, 502 N.W.2d at 8. While the father's incarceration plays a large role here, that fact alone is not determinative of the case. As set forth in this opinion, we have taken into consideration all pertinent factors, including the consequences of father's incarceration. The father's contention does not warrant reversal.

The father also asserts the juvenile court erred in not granting the father's request for a six-month extension.[6] "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. Children require permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). As we have stated numerous times, children are not equipped with pause buttons. *See, e.g.*, *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It

---

[6] The father references Iowa Code section 232.104(2)(b). Section 232.104(2) refers to avenues available to a court following a permanency hearing, and subparagraph (2)(b) provides that a court may enter an order continuing placement of the child for an additional six months. Here, the permanency hearing and termination hearing were held concurrently. Since the juvenile court terminated the father's parental rights, section 232.104(2) really does not come into play. Nevertheless, the father did ask for a six-month extension, so we address the issue.

must be constant, responsible, and reliable."). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *C.B.*, 611 N.W.2d at 494. Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code section 232.116(1)(e) (1989)). At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. *See C.B.*, 611 N.W.2d at 494. By the father's own admission, he expects a fifty- to seventy-month federal sentence but hopes to be released from federal custody in three to three-and-one-half years. His situation will be no different in six months than it was at the time of the termination hearing. Any additional time in limbo would not be in the child's best interests.

For all the above reasons, we affirm the juvenile court's order terminating the father's parental rights to his child Z.G.

**AFFIRMED.**