# IN THE COURT OF APPEALS OF IOWA

No. 17-0750
Filed August 2, 2017

**IN THE INTEREST OF J.C. and J.S.,**
**Minor Children,**

**J.S., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.


Mother appeals from an order terminating her parental rights issued pursuant to Iowa Code chapter 232 (2016). **AFFIRMED.**


Magdalena Reese of Cooper, Goedicke, Reimer, & Reese, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Erin M. Hardisty of Youth Law Center, Des Moines, guardian ad litem for minor children.


Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

The juvenile court terminated Julie's parental rights in her two children pursuant to Iowa Code section 232.116(1)(h) (2016). In this appeal, Julie challenges the sufficiency of the evidence supporting the termination of her parental rights, contends she should be given more time to reunify with her children, challenges whether termination of her parental rights was in the best interest of the children, and contends permissive considerations should preclude the termination of her parental rights.

I.

Termination-of-parental-rights proceedings are reviewed de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework is well established. Pursuant to section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interest of the child. *See id.* Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interest of the child, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806

N.W.2d 458, 475 (Iowa Ct. App. 2011) (citing *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993)).

## II.

## A.

Julie challenges the sufficiency of the evidence supporting the termination of her parental rights pursuant to section 232.116(1)(h).  Under this provision, the State must prove by clear and convincing evidence for each child:

> (1)    The child is three years of age or younger.
> (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)    The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4)    There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).  The first three elements are not disputed here.

Under the fourth element, a child cannot be returned to a parent if the child would remain a child in need of assistance or would be exposed to harm amounting to a new child-in-need-of-assistance adjudication.  *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).  "We have interpreted this to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing."  *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

The record establishes the following.  Julie is the mother of J.C. and J.S. The family initially came to the attention of the Iowa Department of Human

Services (IDHS) when then two-year-old J.C. was found wandering outside of the family's apartment building without supervision. At that time, Julie and J.C. were living with J.C.'s father. J.S. had not yet been born. In addition to concerns regarding supervision, IDHS also had concerns regarding domestic violence in the home. Near the time of IDHS's intervention with this family, J.C.'s father was arrested for domestic abuse against Julie arising out of an incident in which he struck Julie with a sawed-off shotgun, pointed the shotgun at Julie, and threatened to kill her. J.C. was present during this incident. Julie admitted this was not an isolated incident. IDHS also had concerns regarding substance abuse in the home. IDHS decided to remove J.C. from the home. When J.C. was removed from the home he tested positive for methamphetamine and ecstasy. IDHS placed J.C. with his paternal aunt and uncle.

At the time of removal, it was apparent J.C. had suffered significant neglect and trauma. J.C. was nonverbal and demonstrated no language development, communicating by grunting. J.C. demonstrated aggression and violence. J.C. also engaged in odd behaviors. J.C. made cat-like noises, such as hissing and purring, to communicate with others. He also would only sleep on the arm of the sofa and eat from a bowl on the floor.

Julie became pregnant with J.S. around September 2015. Julie tested positive for methamphetamine in March 2016. She claimed the test reflected secondary contact with methamphetamine because she was living with an active methamphetamine user. Julie gave birth to J.S. in May 2016, and he was immediately removed from her care. The father of J.S. is unknown. Julie could

not remember enough information regarding the potential father for him to be identified.

In August 2016, Julie entered Clearview, a residential treatment facility. Up to this point in time, Julie had denied any mental-health concerns and denied her substance abuse despite testing positive for methamphetamine. As a consequence, prior to entering the facility, Julie had done very little to address the issues giving rise to the removal of her children from her care despite the fact her case had been open for a year. The primary unaddressed issues were Julie's lack of employment, lack of stable housing, mental-health concerns, substance-abuse concerns, and continued romantic involvement with criminals and substance abusers. While at Clearview, Julie received substance-abuse treatment and counseling to address her emotional health.

In December 2016, the matter came on for a termination hearing. Julie testified to her progress in the facility and her impending successful discharge from the facility. The State requested the termination proceedings be delayed to afford Julie the opportunity to discharge and demonstrate an ability to resume care of her children. The termination hearing was continued to March 2017.

By the time of the termination hearing, Julie had not made the expected progress. She had not found (or really searched) for employment. She had not found stable housing for her and the children but was instead living in a transitional housing facility for the homeless. She had not found a recovery sponsor. She had not found a therapist. She also had continued or resumed a relationship with an inappropriate paramour who was a known criminal and substance abuser. Indeed, in June 2016, Julie was arrested for theft with the

paramour. When confronted with evidence that she had resumed this relationship, Julie initially denied the relationship, then attempted to minimize the contact, and then attempted to justify the contact by contending she should be able to be involved with anyone she pleases. She is incorrect. Sometimes parents are forced to choose between paramours and their children. Julie chose her paramour. *See In re I.M.*, No. 16-0685, 2016 WL 4036256, at *1 (Iowa Ct. App. July 27, 2016) (collecting cases considering a parent's continued relationship with an inappropriate paramour when terminating parental rights).

We conclude there was sufficient evidence supporting termination of Julie's parental rights pursuant to section 232.166(1)(h). First, Julie failed to take any meaningful action to address the causes of removal for almost one year. "[A] parent's last-minute rush to address longstanding-unaddressed concerns is insufficient to preclude the termination of parental rights." *In re K.G.*, No. 17-0347, 2017 WL 2189768, at *3 (Iowa Ct. App. May 17, 2017); *see In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June 15, 2016) ("After sleepwalking through the first three quarters of this case, Maranda's furious fourth-quarter rally falls short."); *In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2–3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation

purposes was insufficient to demonstrate the child could be returned to the mother's care). It is well-established that "[a] parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

Second, Julie's late attempts to address her substance abuse fall short. While Julie did complete treatment at the substance-abuse facility, her conduct after discharge demonstrated she is unable to implement the strategies and life skills taught at Clearview. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse). Most concerning, Julie has repeatedly attempted to evade accountability for her drug abuse and its impact on the children. *See In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (considering inability to accept responsibility for circumstances relating to removal of children when determining if children can be returned to parent's care).

Julie continued her relationship with her paramour contrary to IDHS's instructions. Julie's continued relationship with her paramour creates an appreciable risk of harm to the children in two respects. First, the paramour is a known substance abuser. Continued association with him increases the chances the children will be exposed to controlled substances and increases the chances Julie will relapse. Second, the paramour creates a risk of exposure to violence

and criminal activity. Julie's continued involvement in this relationship demonstrates her inability to avoid perilous situations and protect her children. *See In re K.C.*, No. 10-1522, 2010 WL 5050710, at *5 (Iowa Ct. App. Dec. 8, 2010) ("The dangers and risks to children as a result of being around drugs and drug users can hardly be understated."); *In re S.T.*, No. 07-2130, 2008 WL 375424, at *1 (Iowa Ct. App. Feb. 13, 2008) (noting mother's continued association with "violent, drug abusing people" would put child at risk if returned to mother's care); *In re M.R.H.*, No. 07-0031, 2007 WL 601843, at *2 (Iowa Ct. App. Feb. 28, 2007) (considering mother's continued choice to associate with drug abusers and her dishonesty regarding her relationships with them).

Julie cannot provide for the basic physical needs of her children. At the time of the termination hearing, she lacked employment and stable housing. *See In re M.T.*, No. 03-1417, 2003 WL 22346539, at *2 (Iowa Ct. App. Oct. 15, 2003) (considering mother's inability to find employment or stable housing when determining children could not be returned to her care); *In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003) (concluding the children would be at a continued risk for harm when the father did not have stable employment or housing).; *In re B.T.*, No. 01-0920, 2002 WL 985533, at *1 (Iowa Ct. App. May 15, 2002) (noting mother only secured stable housing shortly before termination hearing and only had a job for three months prior).

Finally, Julie has not demonstrated an ability to provide for the mental and emotional needs of her children. While J.C. was in her care, he had not obtained basic language skills, and he demonstrated inappropriate behaviors. Throughout

the life of the case, Julie has not demonstrated any appreciation for the needs of her children as compared to her own wants and desires.

It is clear the children could not be returned to Julie's care at the time of the termination hearing. We reject Julie's challenge to the sufficiency of the evidence supporting the statutory ground authorizing the termination of her parental rights.

B.

Julie argues IDHS failed to make reasonable efforts to reunify her with the children. She contends IDHS failed to provide an adequate number of visitation sessions, failed to provide timely semi-supervised and unsupervised contact, and failed to provide transportation assistance. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(9) (providing department of human services must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The core of the mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493.

On de novo review, we conclude the State made reasonable efforts to reunify the family under the circumstances. When Julie entered the residential treatment facility, the department did decrease the number of visits with J.C. and changed the visits from semi-supervised to supervised. The change in visitation was a reasonable response to the change in location and to J.C.'s regressive behaviors. Specifically, J.C. began to demonstrate negative behaviors when visitation was held at the facility. The juvenile court took note of this and directed visitation be increased as J.C. became accustomed to the new visitation schedule and stopped demonstrating inappropriate behaviors. This eventually occurred. The adjustment to Julie's visitation schedule in response to her changed circumstances does not establish the State failed to make reasonable efforts. In addition to appropriate visitation, IDHS offered Julie a variety of other services, including: a CINA assessment; IDHS case management services; visitation; Family Safety, Risk, and Permanency services; family team meetings; family peer support; child-parent psychotherapy; relative placement; drug testing; substance-abuse treatment; mental-health therapy; domestic violence services; gas cards; gift cards; bus passes; and housing assistance. The State made reasonable efforts to reunify the family.

C.

Julie posits the children could have been returned to her care had the juvenile court granted her a six-month extension of time as permitted by Iowa Code section 232.104(2)(b). Under Iowa Code section 232.104(2)(b), the court may enter an order continuing placement of the children upon a finding the need for the children's removal will no longer exist at the end of the additional six-

month period. The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end the extension. Iowa Code § 232.104(2)(b). Like the district court, we cannot conclude the need for removal would have abated if Julie would have had an additional six months' time. Julie has a history of methamphetamine abuse and involvement with criminals, substance abusers, and domestic abusers. Rather than taking action to meaningfully address the causes of removal, Julie has denied, deflected, and attempted to justify her conduct. In addition, the juvenile court already granted Julie a three-month reprieve in these proceedings to allow Julie more time to demonstrate progress in addressing the issues giving rise to removal. She failed to do so. "What's past is prologue." *In re K.F.*, No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sept. 17, 2014).

D.

Julie challenges the juvenile court's determination termination of her parental rights is in the children's best interest. She cites her strong bond with the children and testimony from IDHS workers about her improved interactions with the children. "When considering a child's best interest[ ], we 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.T.*, No. 14-2133, 2015 WL 1055518, at *2 (Iowa Ct. App. Mar. 11, 2015). When determining best interest, it is important to consider both long-term and short-term interest. *See In re J.E.*, 723 N.W.2d

793, 798 (Iowa 2008). To gain insight on what the future may bring, the parent's past actions may be reviewed. *See id.*

We conclude the State proved by clear and convincing evidence that termination of Julie's parental rights is in the best interest of the children. First, Julie overstates the strength of her bond with the children. J.C. was removed from Julie's care while a toddler and J.S. was removed at the time of birth. She thus had little time to build any significant bond with the children. In addition, while J.C. was in her care, Julie failed to provide adequate care to the child. She had difficulty meeting the child's most basic needs, and she exposed the child to domestic violence and drugs. The child suffered while in her care. As noted above, at the time of removal, the child had not developed basic language skills and demonstrated odd behaviors. In contrast, the children are thriving in their current placements. J.C.'s aunt and uncle have been able to address his unique emotional and developmental challenges. J.S. is also progressing well in his current foster care placement. J.C. and J.S. deserve permanency with parents that are able to meet their needs. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (quoting *In re D.W.*, 385 N.W.2d 570, 578, (Iowa 1986))). Termination of Julie's parental rights is in the children's best interest.

E.

Julie argues statutory exceptions in Iowa Code section 232.116(3) are applicable and the court need not terminate her rights. She notes J.C. is in the custody of his paternal aunt, making Iowa Code section 232.116(3)(a) applicable

to J.C. She also argues termination would be detrimental to the children due to the closeness of her relationship with them, making Iowa Code section 232.116(3)(c) applicable to both children. These provisions are permissive and not mandatory. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997), *overruled on other grounds by P.L.*, 778 N.W.2d at 39–40.

Under the circumstances, we see no benefit to maintaining the parent-child relationship that would warrant exercising the permissive exceptions to termination of Julie's parental rights. Julie lacks a significant parental bond with the children. She cannot provide for their basic needs. She cannot keep them safe. They are thriving in their present placements. There is no evidence the children would suffer by having no further contact with their mother.

III.

We affirm the termination of Julie's parental rights in J.C. and J.S.

**AFFIRMED.**