**IN THE COURT OF APPEALS OF IOWA**

No. 17-0918
Filed August 16, 2017

**IN THE INTEREST OF O.N. and A.N.,**
**Minor Children,**

**J.N., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Colin J. Witt, District

Associate Judge.


        Mother appeals from an order terminating her parental rights in her

children pursuant to Iowa Code chapter 232 (2016).  **AFFIRMED.**


        Kevin E. Hobbs, West Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney

General, for appellee State.

        Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem

for minor children.


        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

The juvenile court terminated Jessau's parental rights in her two children pursuant to Iowa Code section 232.116(1)(f) (2016). In this appeal, Jessau challenges the sufficiency of the evidence supporting the statutory ground authorizing the termination of her parental rights, challenges the determination that termination of her parental rights was in the best interest of the children, and contends permissive considerations should preclude the termination of her parental rights.[1]

I.

Termination-of-parental-rights proceedings are reviewed de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework is well established. Pursuant to section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interest of the child. *See id.* Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interest of the child, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.*

---

[1] Jessau's claims that the district court should have granted her an additional six months' time to allow for reunification and that the State failed to make reasonable efforts to facilitate reunification are not sufficiently developed to allow for appellate review. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of an issue without elaboration or supporting authority fails to preserve the claim for appellate review); *In re R.N.*, No. 13-0743, 2013 WL 3864550, at *3 (Iowa Ct. App. July 24, 2013) (concluding passing mention of an issue in brief is not sufficient for appellate consideration).

II.

A.

Jessau challenges the sufficiency of the evidence supporting the termination of her parental rights pursuant to section 232.116(1)(f). Under this provision, the State must prove by clear and convincing evidence for each child:

(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(f). The first three elements are not disputed here.

Under the fourth element, a child cannot be returned to a parent if the child would remain a child in need of assistance or would be exposed to harm amounting to a new child-in-need-of-assistance adjudication. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "We have interpreted this to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

The record establishes the following. Jessau is the mother of O.N. and A.N. The family initially came to the attention of the Iowa Department of Human Services (IDHS) when O.N. was six weeks old. Following an incident of domestic abuse, a no-contact order was issued between Jessau and the father,

Brian, prohibiting any contact between Brian and Jessau or O.N. After Jessau repeatedly permitted contact between Brian and O.N., O.N. was removed from her care. The grounds for removal were concerns regarding domestic violence, Jessau's mental health, and substance abuse in the home.

After a period of supervised visitation, O.N. was returned to Jessau's care under the supervision of IDHS. A short time after O.N. was returned to Jessau's care, Jessau gave birth to A.N., whose father is Brian. Shortly after A.N.'s birth, there was another domestic-violence incident between Jessau and Brian. Jessau left Brian and moved into another man's home after the man replied to a "roommate wanted" advertisement Jessau posted on the internet. The roommate began supplying Jessau with recreational prescription drugs. Jessau permitted contact between the roommate and the children. During this period Jessau was mentally unstable, experiencing multiple mental-health crises. Both Jessau's and Brian's families provided extensive care for the children.

In September 2013, Jessau was at Brian's family's home. A dispute arose that ultimately resulted in Brian assaulting his father's girlfriend and a police officer responding to the incident. Another no-contact order was issued as a result of this incident. Jessau later requested the no-contact order be lifted and began interacting with Brian again. Concern about Jessau's behavior and drug-use increased. She often slept through the day; slurred her words; and sent the children to daycare bruised and dirty.

Jessau completed outpatient substance-abuse treatment twice, but she relapsed. Acting on concerns expressed by the children's daycare, police investigated Jessau's home and found medication within reach of the children

and prescription pills prescribed to someone else. Jessau was charged with child endangerment. Jessau then took the children out of the state without approval from IDHS. Once they returned to Iowa the children were removed from Jessau's care and placed with paternal family members. Eventually the children were placed in foster care after the children's familial placement became concerned Jessau could find the children at their home.

Upon removal, Jessau had a difficult time controlling her emotions. She began to abuse methamphetamine as a means to cope. Jessau's unstable mental health directly impacted her ability to see her children. When questioned why she failed to confirm visitation dates and times, Jessau cited the emotional strain she felt and stated she needed a break. Multiple phone calls and visitations with the children were ended when Jessau became upset about something and discussed inappropriate topics either with the children or in front of them.

After the children were removed, Jessau acted inappropriately toward IDHS workers and others involved. She sent an email to an IDHS worker threatening the worker, calling the worker obscene names, and accusing the worker of coercing Brian into performing sexual acts. She sent late night text messages to the family safety, risk, and permanency (FSRP) worker in charge of supervising visitation, attempted to disparage the children's caregivers in spite of direction not to do so, accused the worker of being unqualified, and requested a different FSRP worker after the worker set appropriate boundaries regarding communication between them. Jessau attempted to see the children at their therapy session and refused to leave when directed to do so. On another

occasion, Jessau sent fourteen text messages to an FSRP worker over a thirty-two-minute period. In the messages Jessau wished the worker dead, commented on the worker's physical size, and called the worker offensive names. Jessau attempted to bring her former roommate, the prescription drug supplier, to visitations and became combative when she was informed he could not attend visitation. In another text message to an FSRP worker, Jessau implied the worker and others involved with visitation were breaking the law, "suspended" everything, and suggested she would take legal action against them. Accompanied by the former roommate and her father, she met with an IDHS worker assigned to the case. During the meeting the three implied they had the ability to get the IDHS worker's supervisor fired.

While Jessau received some mental-health counseling and some substance-abuse treatment after removal, her participation was sporadic at best. She did provide some negative drug screenings. However, she also failed to submit to some requested drug screenings and provided multiple positive drug screenings. Jessau tested positive for methamphetamine in January 2017 and admitted to using methamphetamine as recently as a month and a half prior to termination. At the time of the termination hearing, she had recently begun attending therapy again and sought out substance-abuse treatment. She also struggled to maintain employment but began working a few months prior to the termination hearing. Over the course of the IDHS's involvement with the family, Jessau has also failed to maintain stable housing, moving between Des Moines, Ankeny, and Fort Dodge. She lived with the drug-providing roommate, Brian's family, and now with her father.

On this record, we conclude there was sufficient evidence supporting the termination of Jessau's parental rights pursuant to section 232.116(1)(f). First, Jessau has not resolved her issues with substance abuse. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

Second, Jessau has not addressed her mental-health conditions. Jessau's history of treatment was sporadic at best. At the termination hearing, Jessau touted her recent therapy efforts. In reality, these efforts consisted of one intake session and one group therapy session—not enough to sufficiently address her serious mental-health concerns. Jessau's last-minute attempt to address these concerns "is insufficient to preclude the termination of parental rights." *In re K.G.*, No. 17-0347, 2017 WL 2189768, at *3 (Iowa Ct. App. May 17, 2017); *see In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June 15, 2016) ("After sleepwalking through the first three quarters of this case, Maranda's furious fourth-quarter rally falls short."); *In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to

preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2–3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation purposes was insufficient to demonstrate the child could be returned to the mother's care).

Third, Jessau has demonstrated an inability to control her anger and emotions in the interest of her children. This was demonstrated by Jessau's irrational and abusive conduct toward the department's staff. *See In re J.M.A.*, No. 09-1228, 2009 WL 3380063, at *1 (Iowa Ct. App. Oct. 21, 2009) (noting father was hostile and threatening toward IDHS workers); *In re J.J.S.*, No. 08-1064, 2008 WL 4308206, at *1 (Iowa Ct. App. Sept. 17, 2008) (noting father's hostile conduct toward IDHS in discussing his mental health). Jessau's demonstrated inability to control her emotions negatively impacted the children by limiting her visitation and contact with the children. *See In re A.R.*, No. 13-1958, 2014 WL 667821, at *3 (Iowa Ct. App. Feb. 19, 2014) (considering mother's inability to control her emotions when terminating parental rights).

Fourth, over the life of the case, Jessau continued to entangle herself with inappropriate persons posing a risk of harm to the children. These people included Brian and her former roommate. *See In re K.C.*, No. 10-1522, 2010 WL 5050710, at *5 (Iowa Ct. App. Dec. 8, 2010) ("The dangers and risks to children as a result of being around drugs and drug users can hardly be [over]stated."); *In re S.T.*, No. 07-2130, 2008 WL 375424, at *1 (Iowa Ct. App. Feb. 13, 2008) (noting mother's continued association with "violent, drug abusing people" would put child at risk if returned to mother's care); *In re M.R.H.*, No. 07-0031, 2007 WL 601843, at *2 (Iowa Ct. App. Feb. 28, 2007) (considering mother's continued

choice to associate with negative influences and her dishonesty regarding her relationships with them). The former roommate attempted to intervene in this proceeding, evidencing his continued involvement with Jessau and desired involvement with the children.

Fifth, Jessau cannot provide for the basic physical needs of her children. Over the life of this case, Jessau lacked stable housing and employment. *See In re M.T.*, No. 03-1417, 2003 WL 22346539, at *2 (Iowa Ct. App. Oct. 15, 2003) (considering mother's inability to find employment or stable housing when determining children could not be returned to her care); *In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003) (concluding the children would be at a continued risk for harm when the father did not have stable employment or housing).; *In re B.T.*, No. 01-0920, 2002 WL 985533, at *1 (Iowa Ct. App. May 15, 2002) (noting mother only secured stable housing shortly before termination hearing and only had a job for three months prior). She also was unable to provide appropriate physical care of the children. When the children were in her care they were often unclean and bruised. *See In re D.D.*, No. 03-0881, 2003 WL 21544108, at *1 (Iowa Ct. App. July 10, 2003) (noting children arrived at school dirty while in mother's care).

It is clear the children could not be returned to Jessau's care at the time of the termination hearing without being exposed to an appreciable risk of adjudicatory harm. We reject Jessau's challenge to the sufficiency of the evidence supporting the statutory ground authorizing the termination of her parental rights.

B.

Jessau challenges the juvenile court's determination that termination of her parental rights is in the children's best interest. She cites her strong bond with the children and "obvious parenting strengths." "When considering a child's best interests, we 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.T.*, No. 14-2133, 2015 WL 1055518, at *2 (Iowa Ct. App. Mar. 11, 2015). When determining best interest, it is important to consider both long-term and short-term interest. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2008). To gain insight on what the future may bring, the parent's past actions may be reviewed. *See id.*

We conclude the State proved by clear and convincing evidence that termination of Jessau's parental rights is in the best interest of the children. Jessau's bond with the children is not particularly strong. The children are now five and four years old and have spent a significant portion of their lives being cared for by family members or foster parents. Jessau further compromised her bond with the children when she failed to exercise all of her visitations with the children.

Jessau cites to her "obvious parenting strengths," but she does not identify these strengths, and we are at a loss to identify them. When the children were in her care, she exposed them to domestic violence and drug abuse. She could not and cannot meet their most basic needs for stable housing. She could not provide appropriate physical care for the children.

In contrast, and by Jessau's own admission, the children are thriving in their current placement. The children's foster parents even maintained a relationship and contact with the children's paternal family to help ease the transition.

O.N. and A.N. deserve permanency with parents that are able to meet their needs. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (quoting *In re D.W.*, 385 N.W.2d 570, 578, (Iowa 1986))). Termination of Jessau's parental rights is in the children's best interest.

## C.

Jessau argues a statutory exception in Iowa Code section 232.116(3) is applicable and the court need not terminate her rights. These countervailing considerations are permissive, not mandatory. *See A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011) (citing *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993)).

Under the circumstances, we see no benefit to maintaining the parent-child relationship that would warrant exercising the permissive exceptions to termination of Jessau's parental rights. Jessau lacks a significant parental bond with the children. She cannot provide for their basic needs. She cannot keep them safe. They are thriving in their present placement. There is no evidence the children would suffer by having no further contact with their mother.

III.

We affirm the termination of Jessau's parental rights in O.N. and A.N.

**AFFIRMED.**