# IN THE COURT OF APPEALS OF IOWA

No. 18-1524
Filed November 7, 2018

**IN THE INTEREST OF P.J.,**
**Minor Child,**

**V.S., Mother,**
        Appellant,

**D.J., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof,

District Associate Judge.


        A mother and father both challenge a juvenile court order terminating their

parental relationships with their daughter. **AFFIRMED ON BOTH APPEALS.**


        Rebecca G. Ruggero, Davenport, for appellant mother.

        Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant

father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Rebecca C. Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, guardian

ad litem for minor child.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

A mother, Victoria, and a father, Dustin, separately appeal the juvenile court order terminating their parental relationships with their now six-year-old daughter, P.J. Both parents argue the record lacks clear and convincing evidence supporting termination and termination is not in P.J.'s best interests. Dustin also contends the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunite him with P.J. After reviewing the record, we reach the same conclusions as the juvenile court.[1]

## I.	Facts and Prior Proceedings

P.J. was born in October 2012. The DHS first intervened with the family in the summer of 2017 after receiving reports the parents had physically abused P.J. The child also witnessed violence between her parents. The juvenile court ordered P.J.'s removal from her parents' care and approved placement with her maternal uncle and aunt. They have provided P.J. a stable home throughout the case.

In August 2017, the parents stipulated P.J. was a child in need of assistance (CINA). The juvenile court accepted the stipulation, finding adjudication appropriate under Iowa Code section 232.2(6)(b) and (c)(2) (2017), explaining:

> [T]he State has provided clear and convincing evidence that the parents have been disciplining the child by hitting her. This has left bruising to her lower back and a minor cut to her lip. The mother is struggling with alcoholism. The father has admitted selling

---

[1] We review parental termination cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (citing *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Clear and convincing evidence must support the juvenile court's conclusions. *Id.* (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Clear and convincing evidence means we harbor no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *Id.* (citing *D.W.*, 791 N.W.2d at 706).

marijuana from the residence.  Both these issues demonstrate a potential for harm due to inadequate or inappropriate supervision.

In addition to her physical injuries, mental-health therapists diagnosed P.J. with post-traumatic stress disorder and attention deficit hyperactivity disorder. Therapist Adam Vilmont testified he had "never seen a five-year-old child that has been this significantly traumatized by her parents."  P.J. struggled with tantrums and self-harm, including biting and strangulation.

Concurrent with the child-welfare case, the State charged both parents with child endangerment for their abuse of P.J.  But even with the criminal charges pending, neither Dustin nor Victoria took the necessary steps to repair their relationship with P.J.  Both parents battled serious substance-abuse issues.

A counselor diagnosed Dustin with substance-abuse disorder and antisocial personality disorder.  Dustin was not honest with DHS workers or counseling professionals.  While Dustin eventually pleaded guilty to child endangerment, he was unwilling to fully accept his role in P.J.'s abuse—instead shifting blame to Victoria.  He did not pursue parenting classes.  And in June 2018, Dustin was discharged from counseling for lack of attendance.

Victoria has a history of alcohol abuse.  She was not motivated to engage in treatment.  She also has prescriptions for mental-health conditions, including bipolar disorder, but was inconsistent in taking her medications. In May 2018, authorities arrested Victoria for domestic abuse assault for an incident involving her new boyfriend's family members.

P.J.'s guardian ad litem petitioned for termination of Dustin and Victoria's parental rights in April 2018.  The termination hearing took place in early August

2018. On August 21, 2018, the juvenile court issued a detailed ruling terminating Victoria's parental rights under paragraphs (d), (e), and (f) of Iowa Code section 232.116(1) (2018); and Dustin's under paragraphs (d) and (f). Both parents appeal.

## II. Analysis of Victoria's Appeal

### A. Statutory Grounds

Victoria argues the State failed to prove a statutory ground for termination. Although the juvenile court terminated on three grounds, Victoria challenges only paragraph (d).[2] By so limiting her argument, Victoria waives her challenge to the other two grounds the juvenile court cites. *See In re P.D.*, No. 15-0761, 2015 WL 5577345, at *2 (Iowa Ct. App. Sept. 23, 2015).

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) (citing *D.W.*, 791 N.W.2d at 707). We focus our analysis on subsection (f). Under that section, the juvenile court has authority to terminate Victoria's parental rights if the court finds:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.

---

[2] Although not raising a separate issue, Victoria also appears to ask for additional time to reunify with P.J. She asserts the record contains "no particular reason to rush the termination" given the child's placement with relatives. Under section 232.104(2)(b), the court may continue a child's placement if the court determines the need for removal "will no longer exist at the end of the additional six-month period." We decline Victoria's extension request. Because Victoria has not shown progress in addressing her substance abuse or other parenting deficiencies in one year's time, we do not believe P.J. could safely return to her mother's care in a matter of months.

> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Clear and convincing evidence supports all four elements here. P.J. was older than four years, had been adjudicated CINA, and was out of her parents' custody for more than one year. As to the fourth element, the State presented clear and convincing proof P.J. could not be returned to Victoria's care without suffering physical or mental harm. Specifically, Victoria has been largely unsuccessful in addressing her substance abuse problems and continued to engage in violent behavior. *See A.B.*, 815 N.W.2d at 776.

### B. Best Interests

Victoria next argues termination of her parental rights is not in P.J.'s best interests. In evaluating the child's best interests, we give primary consideration to her safety, long-term nurturing and growth, and physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

Victoria focuses on the mother-child bond. But the record suggests that bond is frayed. The social worker testified P.J. is "suspicious of the adults in her life" and "bonds to adults who she believes are stable." Victoria was not stable. Victoria did not take serious measures to address her substance abuse. As a result, she has not shown the ability to safely parent P.J. *See A.B.*, 815 N.W.2d at 776.

P.J.'s teachers and counselors have commented on the stark improvement in P.J.'s attitude and behavior when she is with her aunt and uncle as compared to when she spends time with her parents. P.J. experienced trauma through physical abuse at the hands of her parents, as well as by witnessing violence between her parents. Although Dustin and Victoria are no longer in a relationship, Victoria has since entered another violent relationship, as evidenced by her recent domestic-abuse-assault charges. Given the ongoing instability and risk of harm, termination of Victoria's rights serves P.J.'s best interests.

## III.    Analysis of Dustin's Appeal

### A.    Statutory Grounds

Dustin challenges the termination of his parental rights under both paragraphs (d) and (f) of section 232.116(1). We find ample evidence to affirm under paragraph (f). *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

Dustin concedes the State offered sufficient proof of the first three elements. His challenge focuses on the fourth element—"that at the present time the child cannot be returned to the custody of the child's parents." Iowa Code § 232.116(1)(f)(4). Dustin alleges he is now sober, employed, has housing, and has shown his ability to provide for P.J. The juvenile court recognized Dustin could meet his basic needs through employment. The dispositive issue is P.J.'s ability to return to Dustin's care.

While Dustin has been more successful in addressing his substance abuse than Victoria, he remained uncommitted to establishing a true relationship with P.J. Dustin missed almost half of the semiweekly visits with his daughter scheduled between January 2018 and the termination hearing. This fact discredits his claim

the court, rather than his own choices, placed obstacles in the way of him establishing his ability to care for P.J. The DHS worker also noted Dustin was slow to start therapy and continues to minimize his role in abusing P.J. We agree with the juvenile court's conclusion P.J. could not be safely returned to her father's care.

### B. Reasonable Efforts

Dustin argues the DHS failed to make reasonable efforts to reunite him with P.J. Specifically, he argues the DHS imposed unreasonable time constraints and other limitations on his visitation schedule. He accuses the DHS of then using his poor attendance as a reason to deny him increased visitation.

"Reasonable efforts to reunite the parent and child are required prior to termination." *In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994) (citing *In re C.L.H.*, 500 N.W.2d 449, 453 (Iowa Ct. App. 1993)). But the primary concern in termination proceedings remains the child's best interests. *Id.* (citing Iowa R. App. P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). Dustin is hard-pressed to show the DHS was at fault when he missed nearly half of his scheduled visits. And even if the DHS could have done more to cater visitation to Dustin's timetable, P.J. exhibited regressive behavior following any visitation with Dustin. Given P.J.'s response to Dustin's presence, the State's efforts at reunification were reasonable under the circumstances.

### C. Best Interests

Dustin also argues termination of his parental rights is not in P.J.'s best interests. His argument can be distilled to recognition of this state's preference to keep children in their own homes. *See* Iowa Code § 232.1 ("This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall

receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state."). By its own terms, section 232.1 only invokes the preference when it serves the child's best interests.

A determination of the child's best interests requires examination of "the child's long-range as well as immediate interests." *Dameron*, 306 N.W.2d at 745. Accordingly, we consider the implications on the child's future in the event the child is returned to his or her parents. *Id.* "Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing." *Id.*

P.J. came to the DHS's attention because her parents abused her. And although Dustin since pleaded guilty to child endangerment, he continues to minimize his role and has not addressed his mental-health issues or parenting deficiencies. His visitation has been inconsistent. Moreover, P.J.'s behavior after contact with Dustin conveys she is not comfortable around him and in fact regresses as a result of his presence. We therefore find termination of Dustin's parental rights is in the child's best interests.

**AFFIRMED ON BOTH APPEALS.**